173 N.J. Super. 531 (1980)
414 A.2d 980
GATX TERMINALS CORPORATION, A CORPORATION ORGANIZED UNDER THE LAWS OF DELAWARE, APPELLANT,
v.
THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DANIEL J. O'HERN, COMMISSIONER, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; AND JOHN J. DEGNAN, NEW JERSEY ATTORNEY GENERAL, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1980.
Decided April 23, 1980.
*532 Before Judges ALLCORN, MORGAN and FRANCIS.
*533 Charles J. Irwin argued the cause for appellant (Irwin & Post, attorneys).
Deborah T. Poritz, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
On this appeal GATX Corporation (GATX) challenges N.J.A.C. 7:1E-4.1 through N.J.A.C. 7:1E-4.24 which were promulgated by the New Jersey Department of Environmental Protection (DEP) pursuant to the Spill Compensation and Control Act (SCCA), N.J.S.A. 58:10-23.11 et seq.
GATX contends that the challenged regulations, an entire subchapter of the regulations governing "Discharges of Petroleum and Other Hazardous Substances," N.J.A.C. 7:1E-1.1, et seq., are invalid because they are "inconsistent with the language of the Spill Compensation Control Act and constitute a substantive addition thereto," and are "beyond the scope of the intent of the legislature." The DEP maintains that all of the provisions of subchapter 4 find adequate support in the statutory authority.
The SCCA became law in 1977. L. 1976, c. 141. The section of the act which contains the legislative findings and declaration, N.J.S.A. 58:10-23.11a, shows that the passage of SCCA was prompted by legislative concern for the damage to the State's economy and environment caused by the discharge of petroleum and other hazardous substances onto the land and into the waters of New Jersey.
The major features of the act can be briefly summarized.[1] The discharge of hazardous substances is prohibited except in compliance with a state or federal permit. N.J.S.A. 58:10-23.11c. *534 Major facilities (defined in the act) are to submit certain information to the DEP including a description of the steps taken to insure prevention of a discharge. N.J.S.A. 58:10-23.11d. Provisions are also made for the DEP to remove or arrange for the removal of discharged hazardous substances under certain circumstances. N.J.S.A. 58:10-23.11f. Most of the remaining features of the act pertain to the provision of compensation for those who are harmed by the discharge of hazardous substances. In order to compensate such individuals, "The New Jersey Spill Compensation Fund" is established, N.J.S.A. 58:10-23.11i, and certain entities and individuals are taxed in order to provide revenue for the Fund. N.J.S.A. 58:10-23.11h, as amended by L. 1979, c. 6.
The authority of the Department of Environmental Protection to promulgate rules and regulations enforcing the act is mentioned in two sections of the statute. N.J.S.A. 58:10-23.11t gives the Commissioner of the Department, the State Treasurer, and the Director of the Division of Taxation the authority to adopt rules which they deem "necessary to accomplish their respective purposes and responsibilities" under the act. In addition, and of particular interest, is § 5(f) of the act, N.J.S.A. 58:10-23.11d(f), which states:
The Department shall promulgate rules and regulations, as provided in section 21 of this act, establishing standards for the availability of preventative cleanup and removal procedures, personnel and equipment at any major facility, as well as requiring the formulation of cleanup and removal plans for each major facility, where such plans are not required by existing Federal statute, rule or regulation ...
The legislative history of the SCCA reveals that the act was in many respects a compromise between the measure which was sought by environmental organizations and that which was favored by industry groups. Testimony at a joint hearing of the Senate and Assembly Energy and Environmental Committees, *535 which was held on June 2, 1976, indicated that the environmentalists and representatives of local government sought a strong approach towards the prevention of discharges and compensation of those who have been harmed by the discharge of oil and other hazardous substances. However, only one such speaker went so far as to suggest that the proposed law should contain minimum design or construction standards. In contrast to the members of the environmental organizations, industry representatives sought a law which would not be extensive or costly. Some of these representatives objected entirely to the need for a state law on this subject.
After the bill was signed into law, controversy between environmentalists and industry groups developed with regard to the regulations proposed by the DEP to implement the act. GATX voiced its objections to the proposed regulations. After some delay the DEP on March 30, 1978 adopted revised regulations relating to the SCCA. Subchapter 1 of the regulations contains a definitions section and other general provisions. Subchapter 2 pertains to "discharge cleanup organizations." It is subchapter 4 relating to "plans, reports and standards" for major facilities which is now attacked by GATX.
Subchapter 4 is extensive. The regulations call for submission to the DEP of two plans. The first, a "discharge, preventative, containment and countermeasure (DPCC) plan" contains a requirement that certain information, relevant to the marshalling of the facility's resources for prevention, containment and countermeasures, be provided to the DEP. N.J.A.C. 7:1E-4.5. In addition to these essentially informational requirements, N.J.A.C. 7:1E-4.5 also mandates that the DPCC plan shall contain a "description of the facility's approach to compliance with the standards" set forth in other sections of the regulations, N.J.A.C. 7:1E-4.6 through 7:1E-4.21. The second plan required is a "discharge cleanup and removal (DCR) plan." This pertains mainly to procedures which will be followed in the *536 event of a discharge, as well as equipment available to contain and remove hazardous substances when a discharge has occurred. N.J.A.C. 7:1E-4.21.
The other sections of subchapter 4 are concerned mostly with the establishment of various standards relating to major facilities. These standards pertain to construction, design, equipment, maintenance, security, inspections and personnel training. In addition, N.J.A.C. 7:1E-4.4(c) provides for preconstruction review of major facilities.
In order to counter the appellant's assertion that the challenged regulations are not authorized by the act, the DEP relies in part upon § 2 of the SCCA, N.J.S.A. 58:10-23.11a. That section states:
The Legislature finds and declares: that New Jersey's lands and waters constitute a unique and delicately balanced resource; that the protection and preservation of these lands and waters promotes the health, safety and welfare of the people of this State; that the tourist and recreation industry dependent on clean waters and beaches is vital to the economy of this State; that the State is the trustee, for the benefit of its citizens, of all natural resources within its jurisdiction; and that the storage and transfer of petroleum products and other hazardous substances between vessels, between facilities and vessels, and between facilities, whether onshore or offshore, is a hazardous undertaking and imposes risks of damage to persons and property within this State.
The Legislature finds and declares that the discharge of petroleum products and other hazardous substances within or outside the jurisdiction of this State constitutes a threat to the economy and environment of this State. The Legislature intends by the passage of this act to exercise the powers of this State to control the transfer and storage of hazardous substances and to provide liability for damage sustained within this State as a result of any discharge of said substances, by requiring the prompt containment and removal of such pollution and substances, and to provide a fund for swift and adequate compensation to resort businesses and other persons damaged by such discharge.
GATX argues that this provision contains no language, express or implied, which would permit regulations relating to design, construction and maintenance standards for major facilities.
*537 Declarations "of public policy in enabling legislation can serve as sources of authorization for regulations related to the furtherance of that policy." In re Health Care Adm'n Bd. v. Finley, 168 N.J. Super. 152, 162 (App.Div. 1979), certif. granted 81 N.J. 330 (1979); In re Promulgation of Rules of Practice, 132 N.J. Super. 45, 49 (App.Div. 1974), certif. den. 67 N.J. 95 (1975). However, an examination of § 2 of the statute reveals that in this instance the declaration and findings of the Legislature do not provide support for the sweeping regulations which are now under attack. It is well settled that "in the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well understood meaning." Fahey v. Jersey City, 52 N.J. 103, 107 (1968); Safeway Trails, Inc. v. Furman, 41 N.J. 467 (1964), cert. den. 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84 (1964). Section 2 merely provides that it was the intent and purpose of the Legislature to exercise its power to "control the transfer and storage of hazardous substances ... by requiring the prompt containment and removal of such pollution and substances ..." Nowhere is there language in this section which by its ordinary and well understood meaning can be read as conferring power on the DEP to regulate the basic design and construction of such facilities.
The DEP also relies on § 5 of the act to support the regulation. The duty placed on the DEP by this section calls for the promulgation of rules and regulations "establishing standards for the availability of preventative, cleanup and removal procedures, personnel and equipment at any major facility ..." Giving the words of this section their ordinary meaning, it is clear that the Legislature merely intended by this language to impose upon the DEP the duty of providing availability standards for "procedures, personnel, and equipment." (emphasis supplied). The power to promulgate regulations regarding procedures, personnel and equipment does not equate to the power to adopt regulations pertaining to design and construction. This section therefore does not provide support for such regulations. *538 At the same time, however, it is clear that, contrary to the assertion of the appellant, the language in this section does provide support for portions of the challenged regulations. Those provisions pertaining to "procedures, personnel and equipment" are valid.
GATX notes that shortly after the SCCA was enacted, the Legislature passed the Water Pollution Control Act, L. 1977, c. 74; N.J.S.A. 58:10A-1 et seq. In the Water Pollution Control Act (WPCA) the Legislature provided rule making authority for the DEP to provide standards for the construction or modification of any treatment work. N.J.S.A. 58:10A-4. However, § 15 of the same act, N.J.S.A. 58:10A-14, requires the DEP to submit any proposed rules and regulations to legislative oversight committees in the Senate and Assembly. These committees can recommend that administrative alterations be made prior to promulgation of the regulations.
Where two statutes dealing with similar subjects are enacted in the same term of the Legislature, the legislative intent underlying one statute may be ascertained by examining the other. See State v. Tillem, 127 N.J. Super. 421, 427 (App.Div. 1974), certif. den. 65 N.J. 557 (1974), cert. den. 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 146 (1974); Wuethrich v. Delia, 134 N.J. Super. 400, 411 (Law Div. 1975), aff'd 155 N.J. Super. 324, 382 A.2d 929 (App.Div. 1978), certif. den. 77 N.J. 486 (1978). It is reasonable to conclude that if the Legislature, in passing the WPCA, felt it necessary to retain oversight powers over the promulgation of regulations pertaining to design and construction of facilities covered by that act, it would not have passed a similar law which allowed the DEP to adopt regulations dealing with design and construction where it did not retain a similar oversight power.
Our Supreme Court has declared that "rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or the rules and regulations therein set down." Common Cause v. N.J. Election Law Enforcem. *539 Comm'n., 74 N.J. 231, 243 (1977); Abelson's Inc. v. N.J. State Bd. of Optometrists, 5 N.J. 412, 424 (1950). Moreover, "it is clear that where a rule of an administrative agency contravenes the statute empowering the agency to make such a rule, the rule lacks legal efficacy." Schwerman Trucking Co. v. DEP, 125 N.J. Super. 14 (App.Div. 1973); Hillman/Kohan v. N.J. Bd. of Optometrists, 169 N.J. Super. 259 (App.Div. 1979); Kamienski v. Board of Mortuary Sciences, 80 N.J. Super. 366 (App.Div. 1963). See, also, N.J. Chamber of Commerce v. N.J. Election Law Enforcem. Comm'n, 135 N.J. Super. 537, 550-551 (Ch.Div. 1975).
We are of the view that those sections of subchapter 4 which do not pertain to "procedures, personnel and equipment" for discharge prevention, cleanup and removal are invalid. Thus, those provisions which impose requirements relating to design and construction of major facilities cannot stand. These include those provisions which are labeled as maintenance or security measures, but which call for more than the adoption of procedures, or the installation of equipment. We also invalidate that part of N.J.A.C. 7:1E-4.5, the DPCC plan, which calls for a "description of the facility's approach to compliance" with the standards of those portions of N.J.A.C. 7:1E-4.6 through 7:1E-4.21 which we have now ruled are not authorized by the SCCA.
Finally, we address ourselves to the question of the validity of the DCR plan. Section 5(f) of the statute states that the DEP "shall promulgate rules and regulations ... requiring the formulation of cleanup and removal plans for each major facility, where such plans are not required by existing Federal statute, rule or regulation." N.J.S.A. 48:10-23.11d(f). In N.J.A.C. 7:1E-4.1(b) the DEP indicates that it "will approve as a DPCC and DCR plan a plan prepared in compliance with 40 CFR 112 where the provisions of 40 CFR 112 are designed to accomplish the same purposes as these regulations.[2] We agree *540 with the Commissioner that § 5 can be reasonably construed to enable those facilities which are required to prepare a cleanup and removal plan pursuant to federal law or regulation to avoid formulating such a plan under the SCCA when that federal law or regulation is designed to further the same purposes as the SCCA. However, GATX asserts that in addition to 40 CFR 112, major facilities may also be covered by other federal regulations, such as 33 CFR 153 and 40 CFR 125 which it contends also require plans to be submitted. We do not attempt to delve into the detailed provisions of the respective federal and state statutes and regulations in order to determine which federal regulations serve to create an exemption from the obligation to provide a discharge cleanup and removal plan under the SCCA. It is sufficient to state that to the extent that N.J.A.C. 7:1E-4.1 requires a facility to formulate a DCR plan when that facility is required by an overlapping federal law or regulation to submit such a plan, that regulation is at odds with § 5 of the SCCA.
In accord with this opinion those parts of N.J.A.C. 7:1E-4.1 through N.J.A.C. 7:1E-4.24 which we have held are not authorized by the Spill Compensation and Control Act are hereby adjudged invalid.
NOTES
[1] We note that the SCCA has recently been amended by L. 1979, c. 346, which was signed into law on January 18, 1980. These amendments do not affect the issues presented in this appeal.
[2] Although the DEP has indicated that it would approve as a DPCC plan a plan which complies with 40 CFR 112, we note that under § 5 of the act it is only cleanup and removal plans which are not to be required if such plans are required under an existing Federal statute, or regulation. This is not to say that the DEP has acted improperly by approving as DPCC plans those plans which are prepared in compliance with this federal regulation.