GATX TERMINALS CORPORATION, RESPONDENT, v. THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DANIEL J. O'HERN, COMMISSIONER, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; AND JOHN J. DEGNAN, ATTORNEY GENERAL, APPELLANTS.

Argued February 9, 1981—Decided May 4, 1981.

*Deborah T. Poritz*, Deputy Attorney General, argued the cause for appellants (*John J. Degnan*, Attorney General of New

Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel).

*Charles J. Irwin* argued the cause for respondent (*Irwin & Post*, attorneys; *Charles J. Irwin* and *Robert A. Goodsell*, on the brief).

The opinion of the Court was delivered by

SULLIVAN, J.

This appeal involves the validity of a portion of the regulations adopted by the Department of Environmental Protection (DEP) under the authority of the Spill Compensation and Control Act (SCCA), *N.J.S.A.* 58:10–23.11 *et seq.*

The SCCA provides for State control of the transfer and storage of hazardous substances, establishes no-fault liability for damages due to spills of such substances, creates the New Jersey Spill Compensation Fund for the payment of claims resulting from spills and imposes a tax on the owner or operator of each regulated facility to finance this fund. On January 6, 1977 the SCCA was approved and, shortly thereafter, the DEP proposed regulations for the administration of the Act. 9 *N.J.R.* 68–69 (1977). After public hearings and considerable debate, the Commissioner of Environmental Protection established a task force comprised of representatives from government, industry and environmental organizations to review these proposed regulations. This task force then developed a revised set of regulations which, with some modifications, was thereafter formally adopted. *N.J.A.C.* 7:1E–1.1 *et seq.*

The DEP regulations, as promulgated, are divided into four subchapters. Subchapter 1 outlines the scope of the regulations and provides definitions for key terms such as "Discharge," "Hazardous substances," "Major facility," "Spill" and the like. *N.J.A.C.* 7:1E–1.1 through 1.8. Subchapter 2 establishes procedures for discharge notification and response. *N.J.A.C.* 7:1E–2.1 through 2.3. Subchapter 3 provides standards for discharge cleanup organizations which engage or intend to engage in

cleanup and removal activities. *N.J.A.C.* 7:1E–3.1 through 3.2. Subchapter 4 requires major facilities to prepare and implement a discharge prevention, confinement or countermeasure plan and a discharge cleanup and removal plan. Additionally, Subchapter 4 establishes various standards for major facilities pertaining to construction, design, equipment, maintenance, security, inspection and personnel training. *N.J.A.C.* 7:1E–4.1 through 4.24.

GATX Terminals Corporation (GATX), one of the regulated major facilities, filed an appeal challenging the validity of the Subchapter 4 regulations on the ground that the language of the SCCA contains no authority for the DEP's promulgation of regulations affecting the design, construction or maintenance of such facilities. The Appellate Division sustained the challenge in part, ruling that the DEP's authority under the Act was limited to providing standards for "procedures, personnel and equipment" and did not extend to the regulation of design and construction. 173 *N.J.Super.* 531, 539 (1980). This Court granted certification to consider the DEP's contention that the Appellate Division ruling ignored the broad mandate of the Legislature and the clear remedial nature of the Act. 85 *N.J.* 109 (1980). For the reasons hereinafter set forth, the judgment of the Appellate Division is reversed and the regulations in question reinstated.

The SCCA reflects legislative awareness of the inherent dangers to the economy and environment presented by spills and discharges of hazardous substances. The legislative findings and declarations set forth therein are:

> The Legislature finds and declares: that New Jersey's lands and waters constitute a unique and delicately balanced resource; that the protection and preservation of these lands and waters promotes the health, safety and welfare of the people of this State; that the tourist and recreation industry dependent on clean waters and beaches is vital to the economy of this State; that the State is the trustee, for the benefit of its citizens, of all natural resources within its jurisdiction; and that the storage and transfer of petroleum products and other hazardous substances between vessels, between facilities and vessels, and between facilities, whether onshore or offshore, is a hazardous undertaking and imposes risks of damage to persons and property within this State.

The Legislature finds and declares that the discharge of petroleum products and other hazardous substances within or outside the jurisdiction of this State constitutes a threat to the economy and environment of this State. The Legislature intends by the passage of this act to exercise the powers of this State to control the transfer and storage of hazardous substances and to provide liability for damage sustained within this State as a result of any discharge of said substances, by requiring the prompt containment and removal of such pollution and substances, and to provide a fund for swift and adequate compensation to resort businesses and other persons damaged by such discharge. [N.J.S.A. 58:10–23.11a]

The Act prohibits the discharge of hazardous substances. N.J.S.A. 58:10–23.11c. It requires the owners or operators of a facility subject to the Act to submit detailed information to the DEP including a primary and contingency cleanup and removal plan for spills, an itemization of all equipment and trained personnel used or employed in any capacity at the facility to prevent discharges of hazardous substances, and a list of all precautionary measures followed to prevent discharges. N.J. S.A. 58:10–23.11d(a) – (e). Subparagraph (f) of the same section requires the DEP to promulgate rules and regulations "establishing standards for the availability of preventative, cleanup and removal procedures, personnel and equipment at any major facility ..., as well as requiring the formulation of cleanup and removal plans for each such major facility where such plans are not required by existing Federal statute, rule or regulation."[1] N.J.S.A. 58:10–23.11d(f).

In considering GATX's challenge to the validity of the Subchapter 4 regulations, the Appellate Division summarized the gist of the disputed regulations as follows:

Subchapter 4 is extensive. The regulations call for submission to the DEP of two plans. The first, a "discharge, preventative, containment and countermeasure (DPCC) plan" [sic] contains a requirement that certain information, relevant to the marshalling of the facility's resources for prevention, containment and countermeasures, be provided to the DEP. N.J.A.C. 7:1E–4.5. In addition to these essentially informational requirements, N.J.A.C. 7:1E–4.5 also mandates

---

[1]Additional statutory provisions relating to liability for discharges, cleanup and removal costs, the New Jersey Spill Compensation Fund and claims against that fund, etc. are not involved in this appeal.

that the DPCC plan shall contain a "description of the facility's approach to compliance with the standards" set forth in other sections of the regulations, *N.J.A.C.* 7:1E–4.6 through 7:1E–4.21. The second plan required is a "discharge cleanup and removal (DCR) plan." This pertains mainly to procedures which will be followed in the event of a discharge, as well as equipment available to contain and remove hazardous substances when a discharge has occurred. *N.J.A.C.* 7:1E–4.21.

The other sections of subchapter 4 are concerned mostly with the establishment of various standards relating to major facilities. These standards pertain to construction, design, equipment, maintenance, security, inspections and personnel training. In addition, *N.J.A.C.* 7:1E–4.4(c) provides for preconstruction review of major facilities.

[173 *N.J.Super.* at 535–536]

After reviewing the various statutory provisions, the Appellate Division was unable to find any language conferring power on the DEP to regulate the basic design and construction of facilities subject to the Act. Referring specifically to *N.J.S.A.* 58:10–23.11d(f), the Appellate Division held that the Legislature merely intended to impose upon the DEP "the duty of providing availability standards for *'procedures, personnel* and *equipment.'* " *Id.* at 537. The power to promulgate regulations regarding procedures, personnel and equipment, the Appellate Division said, "does not equate to the power to adopt regulations pertaining to design and construction." *Id.* Accordingly, it concluded that the sections of Subchapter 4 which did not pertain to "procedures, personnel and equipment" for discharge prevention, cleanup and removal were invalid. Regulations which imposed requirements relating to design and construction of major facilities were, therefore, declared illegal. The Appellate Division also invalidated that part of the discharge prevention, containment or countermeasure plan which called for a description of the facility's compliance with the standards of Subchapter 4 found by the Appellate Division to be unauthorized. Finally, the Appellate Division approved the requirement for a discharge cleanup and removal plan under Subchapter 4 to the extent that such a plan was not required by an overlapping federal law or regulation. *Id.* at 539–540.

We conclude that the Appellate Division ruling takes too narrow a view of the SCCA. While the Act does not expressly provide for regulations covering design and construction, it does specify that the enactment is "necessary for the general health, safety, and welfare of the people of this State, [and] shall be liberally construed to effect its purposes." *N.J.S.A.* 58:10–23.11x. The Appellate Division ruling would largely eliminate the ability of the DEP to prevent spills and discharges of hazardous substances and limit its authority to dealing with spills and discharges after they have already taken place.

We find in *N.J.S.A.* 58:10–23.11d, and particularly in subparagraph (f) thereof which provides that the DEP "shall promulgate rules and regulations ... *establishing standards for the availability of preventative,* cleanup and removal procedures, personnel and *equipment*" (emphasis added), a clear statutory basis for DEP authority to deal with the prevention of discharges, as well as with containment, cleanup and removal after a spill has occurred. If the equipment at major facilities is not designed and constructed so as to eliminate the causes of discharges, spill prevention can never effectively be achieved. In this connection, we note that while new major facilities must meet the standards of the DEP's discharge prevention regulations, an existing facility is given a reasonable period of time to meet the standards that have been established. *N.J.A.C.* 7:1E–4.6.[2]

---

[2]No significance can be attached to the statutory provision for legislative committee review of proposed DEP regulations contained in the Water Pollution Control Act, *N.J.S.A.* 58:10A–1 *et seq.* The SCCA, the Act under review, contains no such provision, nor does the Water Quality Planning Act, *N.J.S.A.* 58:11A–1 *et seq.* The Safe Water Drinking Act, *N.J.S.A.* 58:12A–1 *et seq.*, on the other hand, requires that regulations proposed by the DEP be filed with the Legislature which can disapprove of them by concurrent resolution stating that the Legislature does not favor the proposed regulation.

Since all of these acts were passed at about the same time, it appears that the Legislature did not use any specific approach with regard to the promulgation of the respective regulations thereunder.

■ It is significant that after the regulations in question had been finally adopted, the Act was amended by *L.* 1979, *c.* 346. During legislative hearings on the amendments that would, *inter alia*, broaden the Act's definition of major facilities and thus expand the scope of the SCCA, industry representatives expressed concern that the cost of complying with the DEP's preventive regulations would adversely affect smaller chemical companies. The Legislature clearly responded to this industry concern by exempting the smaller companies from the DEP regulations. *N.J.S.A.* 58:10–23.11d(f) (as amended by *L.* 1979, *c.* 346, § 2). However, it did not attempt to curtail or limit the DEP's regulatory program. It can be inferred, therefore, that the Legislature approved of the DEP's interpretation of its regulatory powers under the Act. See *Matawan Borough v. Monmouth Cty. Tax Bd.*, 51 *N.J.* 291, 300 (1968).

■ A further indication of the legislative intent can be found in the Federal Water Pollution Control Act Amendments of 1972, 33 *U.S.C.A.* § 1251 *et seq.*, of which the Legislature was plainly aware since the SCCA specifically refers to this federal statute. *N.J.S.A.* 58:10–23.11f(a). Moreover, some of the language in *N.J.S.A.* 58:10–23.11d(f), the statutory authorization for the DEP's promulgation of the challenged regulations, actually seems to have been borrowed from the operative terminology of the similar federal provision, 33 *U.S.C.A.* § 1321(j)(1)(C). It would also appear that substantial portions of the DEP regulations were patterned on then existing federal regulations promulgated pursuant to the Federal Amendments. *Compare, e.g., N.J.A.C.* 7:1E–4.7(b) *with* 40 *C.F.R.* § 112.7(c) (1980) (appropriate containment structures and equipment); *N.J.A.C.* 7:1E–4.11 *with* 40 *C.F.R.* § 112.7(e)(9)(i) (1980) (security provisions); *N.J.A.C.* 7:1E–4.12 *with* 40 *C.F.R.* § 112.7(e)(10) (1980) (personnel training); *N.J.A.C.* 7:1E–4.14 *with* 40 *C.F.R.* § 112.-7(e)(2) (bulk storage tanks); and *N.J.A.C.* 7:1E–4.19(c) *with* 40 *C.F.R.* § 112.7(e)(3)(i) (1980) (buried pipelines). In such a situation, a court may look to the analogous federal statute and regulations thereunder for guidance. See *Galloway Tp. Bd. of*

*Ed. v. Galloway Tp. Ass'n of Ed. Sec.*, 78 *N.J.* 1, 10 (1978). The broad scope of these federal regulations concerning the installation of structures and equipment to prevent discharges, extant when the Legislature was considering the SCCA, is further evidence of the DEP's authority in this area.

In holding that the SCCA authorizes the DEP to establish standards for design and construction of facilities, we sustain the facial validity of regulations. This appeal does not involve a challenge to them as applied in a particular case.

The judgment of the Appellate Division is hereby reversed and Subchapter 4 of the regulations is upheld in its entirety.

*For reversal*—Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and POLLOCK—5.

*For affirmance*—None.