CONLEY, J. T. C.
Plaintiff applied to the Director of the Division of Taxation for a sales tax refund in connection with taxes it had paid during the construction of a senior citizen housing project in the Town of Newton in Sussex County. The Director denied plaintiff’s claim for refund and this action followed.
The parties stipulated the facts. The real property on which the housing project was later built was purchased by the Newton Housing Authority in 1971. The Authority decided to build an 80-unit, low-income senior citizen apartment complex on.the property on a basis known by the U. S. Department of Housing and Urban Development as “turnkey construction.” The name “turnkey” is apparently a shorthand reference derived from the practice of a local housing authority paying the developer upon completion of construction and upon his “turning over of the keys.” See Lehigh Constr. Co. v. Orange Housing Auth., 56 N.J. 447, 450, 267 A.2d 41 (1970).
In its Turnkey Handbook, HUD describes turnkey construction in these general terms:
Under the Turnkey method, a developer or builder who owns a site or an option, or can obtain one, may submit, in response to an invitation from a Local Housing Authority (LHA), a proposal to build housing of good design, quality, and workmanship for low-income families. If the developer’s proposal is accept *232 able to the LHA and [HUD], the LHA will enter into a Contract of Sale under which the LHA agrees to purchase the completed development. This contract will be backed up by the financial assistance commitment of the United States of America, acting through HUD, to the LHA. .., and it will enable the developer to secure commercial construction financing in his usual way.
Plaintiff, a construction company, entered into a joint venture to build the housing project with a developer named Weiner. On March 30, 1973 Weiner and the Housing Authority executed a contract of sale of the type referred to in the HUD Turnkey Handbook, quoted above. On April 13, 1973 the Housing Authority conveyed title to the vacant land to Weiner for $113,488. The obvious reason for this transfer was so that Weiner would own the site prior to the start of construction, as required by HUD. Plaintiff thereupon constructed the apartment complex. On September 11, 1974 Weiner conveyed title to the premises back to the Housing Authority for a sale price of $1,864,489. During the period of June 1, 1973 to June 30, 1974 plaintiff contractor paid sales taxes in the amount of $12,395.55 on purchases it made in connection with its construction of the project. It is these taxes for which plaintiff seeks a refund in this proceeding.
Plaintiff argues that it is entitled to the refund because the transactions that were taxed should have been exempt pursuant to N.J.S.A. 54:32B-8.22[1], which provides in part as follows:
Receipts from sales made to contractors, subcontractors or repairmen of materials, supplies or services for exclusive use in erecting structures or building on, or otherwise improving, altering or repairing real property of organizations described in subsections (a) and (b) of section 9 of the Sales and Use Tax Act (C.54:32B-9) are exempt from the tax im|)osed under that act. ...
It is undisputed that the Newton Housing Authority is one of the types of organizations described in N.J.S.A. 54:32B-9. However, during the period of time for which sales taxes were imposed, title to the real estate was in the name of the developer, Weiner. One of the issues presented by this case is whether the real property during its development stage was property of *233 the Housing Authority within the intent of the exemption set forth in N.J.S.A. 54:32B-8.22.
Plaintiff argues, first, that the federal policy of promoting the construction of low-rent housing requires that plaintiff’s purchases be exempt, thus reducing the cost of the housing project. Plaintiff is not clear as to how it thinks the statute should be read — that is, whether it should receive an outright exemption from taxation by judicial decree or whether the terms of the statute should be liberally construed so that plaintiff would fit within those terms. Nonetheless, it is clear that plaintiff contends it should not have to pay the tax.
In support of its argument, and by way of analogy, plaintiff cites Lehigh Constr. Co. v. Orange Housing Auth., supra. In that case, the Supreme Court held that in adopting the Local Housing Authorities Law, N.J.S.A. 55:14A-1 et seq., the Legislature intended to sanction an exemption of turnkey housing construction from the competitive bidding requirements of N.J. S.A. 40:50-1 (now N.J.S.A. 40A:ll-4).
The Lehigh Construction Co. case does not support plaintiff’s argument. In that case the court pointed to language in the Local Housing Authorities Law that made clear the Legislature’s intention to accommodate the Federal Government’s movement in the area of housing. 56 N.J. at 462-463, 267 A.2d 41. There is no such language in the Sales and Use Tax Act. The court also found that the turnkey program for low-rent housing would not be available in New Jersey if competitive bidding of the type specified by N.J.S.A. 40:50-1 were held to apply. Id. at 451, 267 A.2d 41. Imposition of a sales tax would not preclude construction of such projects; at most, it would increase their cost. In this connection, it is interesting that the court in Lehigh Construction Co. made an observation that runs counter to plaintiff’s argument in this case that it should not have to pay tax in order to keep down the project’s costs. The court said:
Unlike the competitive bidding process with its award of the contract to the lowest responsible bidder, the primary emphasis of Turnkey is not upon cost. Recognition is given to the thesis that in housing more than any other type of *234 public construction, price should be only one factor and that design and quality should receive prime consideration. [Id. at 456, 267 A.2d 41]
Moreover, HUD’s Turnkey Handbook alerts developers that sales taxes are one of the specific items to be considered in the presentation of a proposed development price to the local housing authority and to HUD. This factor alone would tend to negate any suggestion that there is a federal policy against the imposition of sales taxes in connection with the construction of a turnkey project.
I find that there is no federal policy that would require this court to grant an exemption to plaintiff pursuant to N.J.S.A. 54:32B-8.22 or that would require a liberal construction of the statute in favor of plaintiff. The argument made by plaintiff was also raised and rejected in Northgate Constr. Co., Inc. v. State Tax Comm’n, 377 Mass. 205, 385 N.E.2d 967 (1979). The reasoning of the Supreme Judicial Court of Massachusetts on this point in Northgate is sound and is fully applicable to the facts of this case.
Plaintiff also argues that in the circumstances of the present case developer Weiner held title to the subject property as a nominee of the Housing Authority and that the Authority was the owner of the property within the intent of N.J.S.A. 54:32B-8.22. Plaintiff recites that title was conveyed by the Authority to Weiner and then back again to the Authority only because of the requirements of turnkey projects that a developer own the site prior to construction and because of the commercial lender’s requirement that the developer have title in order to secure construction financing. Plaintiff contends that as a practical matter Weiner could not have transferred title to any person other than the Authority. In essence, plaintiff argues that even though Weiner had legal title, the Authority was the equitable owner of the property during construction.
In In re Houghton’s Estate, 75 N.J. 462, 383 A.2d 713 (1978), the Supreme Court affirmed a decision of the Appellate Division which had held that real estate under a contract of sale belonged to the legal owner as opposed to the equitable owner in the context of an inheritance tax dispute. This principle applies *235 here as well. N.J.S.A. 54:32B-8.22 provides an exemption for receipts from certain sales relating to “real property of [specified exempt] organizations.” There is no suggestion in the statute that the Legislature meant equitable ownership rather than legal ownership. Plaintiff concedes that Weiner had legal title to the premises while it was being constructed. The stipulated facts support this conclusion. Since the property was thus “property of” Weiner and not of the Housing Authority in the sense intended by the Legislature, there is no basis for the exemption plaintiff claims. This would be so even if there were merit to plaintiff’s contention that the Authority had equitable title to the project.
It is not necessary for this court to evaluate the latter contention of plaintiff because of the holding set forth in the preceding paragraph. Nonetheless, it is interesting to note that the highest courts of Massachusetts and Vermont have each considered a building contractor’s claim for a sales tax exemption on the grounds that a local housing authority was the equitable owner of a turnkey project built by the contractor on land owned by a developer. Northgate Constr. Co., Inc. v. State Tax Comm’n, supra; Pizzagalli Constr. Co., Inc. v. Vermont Dep’t of Taxes, 132 Vt. 496, 321 A.2d 437 (Sup.Ct.1974). In each case the exemption provision was similar to N.J.S.A. 54:32B -8.-22, except that the Massachusetts and Vermont statutes both extended the exemption to include structures not only owned by but also “held in trust for the benefit of” specified governmental agencies. Even with the broader exemption language, both courts held that the contractor was liable for the sales tax. In Northgate the court put it quite succinctly:
The developer did not hold the project premises in trust for the benefit of the [local housing authority]. A person under obligation to construct a project and then to convey the property to another is not a trustee of that property for the benefit of the prospective purchaser. [Citations omitted]. The turnkey developer’s obligation is contractual and not fiduciary. [377 Mass, at 209, 385 N.E.2d at 970]
The reasoning and conclusions of the Massachusetts and Vermont courts are persuasive. They lend support to this court’s construction and application of the New Jersey exemption provi *236 sion which is very similar to the Massachusetts and Vermont statutes. See GATX Terminals Corp. v. Environmental Protection Dep’t, 86 N.J. 46, 53-54, 429 A.2d 355 (1981); Monmouth Airlines, Inc. v. Taxation Div. Director, 2 N.J.Tax 47,53 (Tax Ct. 1980).
The Clerk of the Tax Court will enter judgment dismissing plaintiff’s complaint.

This exemption was codified as N.J.S.A. 54:32B-8(w) prior to the enactment of L.1980, c. 105, § 34, effective September 11, 1980.