960 A.2d 413 (2008)
404 N.J. Super. 29
In re ELECTION LAW ENFORCEMENT COMMISSION ADVISORY OPINION NO. 01-2008.
No. A-2816-07T1
Superior Court of New Jersey, Appellate Division.
Argued October 20, 2008.
Decided December 4, 2008.
*414 Robert P. Zoller, Trenton, argued the cause for appellant Friends of Senator Wayne R. Bryant (Sterns & Weinroth, attorneys; Richard K. Weinroth, of counsel; Mr. Zoller and Christopher E. Torkelson, on the brief).
James P. Wyse, argued the cause for respondent New Jersey Election Law Enforcement Commission (Herold and Haines, P.A., attorneys, Warren; Mr. Wyse and Craig S. Provorny, Warren, on the brief).
Before Judges REISNER, SAPP-PETERSON and ALVAREZ.
The opinion of the court was delivered by
REISNER, J.A.D.
Former New Jersey State Senator Wayne Bryant (Senator Bryant) appeals from an advisory opinion of the Election Law Enforcement Commission (ELEC) that he cannot use campaign funds from his single candidate committee to pay legal expenses incurred in defending himself against federal criminal charges.[1] We affirm.

I
Senator Bryant's inquiry arose in the following context. In March 2007, he was indicted on federal charges alleging, among other things, that he obtained essentially "no show" jobs at the University of Medicine and Dentistry and Rutgers Law School-Camden, in exchange for using his official position to obtain public funding for those institutions. He was also accused of increasing his public pension by obtaining a position as counsel to a local board of social services but failing to personally perform the required legal work. He did not run for re-election and his last term as Senator ended in January 2008.
On December 21, 2007, Senator Bryant's counsel filed a request with ELEC for an advisory opinion as to whether campaign funds could be used to pay for his legal defense against the federal criminal charges.[2] On January 25, 2008, ELEC *415 issued Advisory Opinion No. 01-2008, addressing the following question, as the agency phrased it: "May an elected officeholder use campaign funds from his single candidate committee to pay for legal expenses incurred in defense of a criminal indictment issued by the United States Attorney's office?" ELEC answered the question in the negative, concluding that Senator Bryant's criminal defense costs were not "ordinary and necessary expenses of holding public office," N.J.S.A. 19:44A-11.2(a)(6), and that spending campaign funds for those costs would contravene a prohibition on expending campaign monies for legal fees that constitute "personal use." N.J.A.C. 19:25-6.10(b). See also N.J.A.C. 19:25-6.5(c)

II
The New Jersey Campaign Contributions and Expenditures Reporting Act (Act), N.J.S.A. 19:44A-1 to -47, limits the use of campaign funds to certain specified purposes:
a. All contributions received by a candidate, candidate committee, a joint candidates committee or a legislative leadership committee shall be used only for the following purposes:
(1) the payment of campaign expenses;
(2) contributions to any charitable organization... except any charitable organization of which the candidate or a member of the candidate's immediate family is a paid officer, director or employee or receives compensation for goods or services provided to the organization;
(3) transmittal to another candidate, candidate committee, or joint candidates committee, or to a political committee, continuing political committee, legislative leadership committee or political party committee, for the lawful use by such other candidate or committee;
(4) the payment of the overhead and administrative expenses related to the operation of the candidate committee or joint candidates committee of a candidate or a legislative leadership committee;
(5) the pro rata repayment of contributors; or
(6) the payment of ordinary and necessary expenses of holding public office.

[N.J.S.A. 19:44A-11.2a (emphasis added).]
These limitations on the use of campaign funds were adopted in response to a report issued in 1990 by the Ad Hoc Commission on Legislative Ethics and Campaign Finance. The Commission was created to address "certain problems and public concerns" with the then-current system of campaign finance, which the Commission found had led to "a slow, yet insidious erosion of public confidence in the system which is harmful not only to the reputation of the Legislature, but also to the democratic tradition in this State." Among the problems the Commission identified were: "The allowable uses of political contributions are unclear and potentially open to abuse;" and "A public perception that legislators use their official positions to further their personal interests."
The Commission Report also expressed the members' conclusion that
political contributions were donated to a candidate or officeholder for one purpose *416 only: to get that person elected or reelected. Hence, any other use of this money must be carefully controlled. Permitting funds to be converted for personal use poses clear ethical and legal difficulties.
The Commission recognized that, while the Act at that time did not address permissible uses of campaign contributions, ELEC had adopted regulations (then codified as N.J.A.C. 19:25-7.2 and -7.4) prohibiting candidates from converting campaign contributions to their personal use.[3] However, the Commission recommended that the issue also be addressed by statute. For that reason, the Commission recommended that legislation be adopted to restrict the use of political contributions to five purposes: payment of campaign-related expenses, charitable contributions, payment of campaign committee expenses, contributions to other candidates or political committees, and refunds to contributors.
When legislation was introduced in 1992 to implement the Commission's recommendations, it initially limited the use of campaign contributions to those recommended by the Report. See Sponsor's Statement to Assembly Bill No. 100, at 37 (January 14, 1992); Sponsor's Statement to Assembly Bill No. 196, at 2 (January 14, 1992); Sponsor's Statement to Assembly Bill No. 869, at 37 (February 10, 1992). However, the legislation was subsequently amended before passage to add a provision permitting contributions to be used for "the payment of ordinary and necessary expenses of holding public office." See Assembly State Government Committee, Statement to Assembly Committee Substitute for Assembly Bill Nos. 100, 195, 196, 646, 659 and 869 (May 11, 1992). The final version of the legislation included this addition. L. 1993, c. 65, § 17.
While there is little in the legislative history to explain the change, the legislation's original sponsor, Assemblyman Martin, stated in a contemporaneous interview that the Legislature had "substantially followed the recommendations" of the Commission. In discussing the provision concerning excess campaign contributions, Assemblyman Martin indicated that "such funds could be ... used for the `ordinary and necessary expenses of political life,' like traveling expenses to political events." Jay Romano, Parties Join to Cap Campaign Donations, N.Y. Times, May 24, 1992. The legislation was adopted thereafter and signed into law on March 8, 1993.
Based on the legislative amendment, N.J.S.A. 19:44A-11.2a, ELEC, the agency statutorily charged with enforcing the Act, N.J.S.A. 19:44A-6, adopted a regulation specifically directed at the use of campaign contributions for legal expenses.[4] That regulation, N.J.A.C. 19:25-6.10, provides a non-exhaustive list of permitted uses. It specifically allows the use of campaign funds for legal fees incurred in defending against certain civil actions, including defamation suits, suits for alleged violations of the Act, and ethics charges filed by the Legislature against one of its members. N.J.A.C. 19:25-6.10(a)2 to (a)4. Use of funds to pay for the costs of defending *417 against criminal charges is not included in the list, although it is not specifically prohibited.
However, the regulation prohibits "personal use" of the funds. The regulation provides as follows:

Permissible use of funds for legal fees and expenses shall not include such fees and expenses incurred in connection with the candidate or officeholder's personal or business affairs, or which would otherwise qualify as "personal use" under N.J.A.C. 19:25-6.5(c).

[N.J.A.C. 19:25-6.10(b) (emphasis added).]
In turn, N.J.A.C. 19:25-6.5(c) defines "personal use" as follows:
(c) The term "personal use" ... means any use of contributions to pay or fulfill a commitment, obligation or expense of any person that would arise or exist irrespective of the candidate's campaign or irrespective of the candidate's ordinary and necessary expense of holding public office.
[Ibid. (emphasis added).]
The term "ordinary and necessary expenses" is also defined in the regulations:
(a) The term "ordinary and necessary expenses of holding public office" as used in N.J.A.C. 19:25-6.5(a)6 means any expense that reasonably promotes or carries out the responsibilities of a person holding elective public office, except that no funds received by a candidate, candidate committee, or joint candidates committee shall be used for the payment of any expense arising from the furnishing, staffing or operation of an office used in connection with the officeholder's official duties as an elected public official.
[N.J.A.C. 19:25-6.7(a) (emphasis added).]
Appellant contends that the Act and its implementing regulations should be construed consistent with the way the Federal Election Commission (FEC) has construed the Federal Election Campaign Act, 2 U.S.C.A. §§ 431 to 455. As we will later explain, we find no basis to follow the federal scheme. Nonetheless, we address the argument.
The FEC permits the use of campaign funds to pay for defense against criminal charges, so long as the charges relate to "the candidate's campaign activities or duties as a Federal officeholder." See, e.g., FEC Advisory Opinion 2005-11; FEC Advisory Opinion 2003-17. The federal statute, however, is phrased differently than the Act. Although, like the Act, it prohibits using campaign funds for "personal use," the federal law also permits expenditures in a general catchall category, "any other lawful purpose":
(a) Permitted uses. A contribution accepted by a candidate, and any other donation received by an individual as support for activities of the individual as a holder of Federal office, may be used by the candidate or individual
(1) for otherwise authorized expenditures in connection with the campaign for Federal office of the candidate or individual;
(2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

(3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986 [26 U.S.C.S. § 170(c)];
(4) for transfers, without limitation, to a national, State, or local committee of a political party;
(5) for donations to State and local candidates subject to the provisions of State law; or

*418 (6) for any other lawful purpose unless prohibited by subsection (b) of this section.

[2 U.S.C.A. § 439a(a) (emphasis added).]
In turn subsection (b) defines and lists prohibited personal uses:
(1) In general. A contribution or donation described in subsection (a) shall not be converted by any person to personal use.
(2) Conversion. For the purposes of paragraph (1), a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office, including
(A) a home mortgage, rent, or utility payment;
(B) a clothing purchase;
(C) a noncampaign-related automobile expense;
(D) a country club membership;
(E) a vacation or other noncampaign-related trip;
(F) a household food item;
(G) a tuition payment;
(H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and
(I) dues, fees, and other payments to a health club or recreational facility.
[2 U.S.C.A. § 439a(b) (emphasis added).]
Based on the federal statute, the FEC has adopted regulations concerning use of campaign funds for "non-campaign" expenses. However, reflecting its enabling legislation, the FEC regulations are considerably broader than the ELEC regulations in allowing use of the funds for "any other lawful purpose" so long as it is not a prohibited personal use. Campaign funds "[m]ay be used to defray any ordinary and necessary expenses incurred in connection with the recipient's duties as a holder of Federal office," 11 C.F.R. § 113.2(a), including work-related travel, donation to other state or federal political organizations, or "any other lawful purpose, unless such use is personal use under 11 CFR 113.1(g)." 11 C.F.R. § 113.2(e).
"Personal use" is defined as it is in the federal statute:
Personal use means any use of funds in a campaign account of a present or former candidate to fulfill a commitment, obligation or expense of any person that would exist irrespective of the candidate's campaign or duties as a Federal officeholder.

[11 C.F.R. § 113.1(g) (emphasis added).]
Unlike ELEC, the FEC has not adopted regulations addressing the use of campaign funds for legal expenses. Rather, it has chosen to address those uses entirely on a case by case basis:
(ii) The Commission will determine, on a case-by-case basis, whether other uses of funds in a campaign account fulfill a commitment, obligation or expense that would exist irrespective of the candidate's campaign or duties as a Federal officeholder, and therefore are personal use. Examples of such other uses include:
(A) Legal expenses;
[11 C.F.R. § 113.1(g)(1)(ii).]
Moreover, the federal law and FEC's regulations define "personal use" in a way that is significantly different from ELEC's definition. Federal regulations prohibit use of campaign funds to fulfill obligations or expenses "that would exist irrespective of the candidate's ... duties as a federal officeholder." 11 C.F.R. § 113.1(g) (emphasis *419 added). See 2 U.S.C.A. § 439a(b). The ELEC regulations define "personal use" as use of the funds to pay expenses "that would arise or exist ... irrespective of the candidate's ordinary and necessary expense of holding public office." N.J.A.C. 19:25-6.5(c) (emphasis added). We conclude that the difference in wording is fatal to Senator Bryant's argument.
Defending against criminal charges might be an obligation that would not exist "irrespective of" an officeholder's carrying out the duties of his or her elected office (albeit in an allegedly corrupt manner), but would exist "irrespective of" the individual's "ordinary and necessary expense" of the office. Even in an era when public officials are being called with increasing frequency to answer criminal charges of corruption in office, their legal defense costs could hardly be described as an "ordinary" expense of office-holding. This view is also consistent with ELEC's definition of an "ordinary and necessary" expense as "any expense that reasonably promotes or carries out the responsibilities of a person holding elective public office." N.J.A.C. 19:25-6.7(a).[5]
While appellant urges that ELEC should have looked to the federal law, and its construction by the FEC, the history of the Act and its 1993 amendments does not indicate that our Act was modeled on the federal law. Instead, the 1993 amendments were based on the Commission Report, which recommended strict limits on the use of campaign funds. Although the federal and state enactments do share some of the same terminology, the federal law is more broadly worded and, as discussed above, there are significant differences in the implementing regulations adopted by ELEC and FEC. Moreover, as appellant concedes, the history of the ELEC regulations is void of any indication that ELEC modeled its regulations after the FEC rules. Therefore, we find that appellant's reliance on Town Tobacconist v. Kimmelman, 94 N.J. 85, 99-100, 462 A.2d 573 (1983), and GATX Terminals Corp. v. Dep't of Environmental Protection, 86 N.J. 46, 53-54, 429 A.2d 355 (1981), is misplaced.
When ELEC adopted N.J.A.C. 19:25-6.7, defining the ordinary and necessary expenses of holding public office, the agency's published comments stated its goal of "[promoting] public confidence in the integrity of the electoral system and its financing." 26 N.J.R. 2754 (July 5, 1994). In adopting N.J.A.C. 19:25-6.10, governing the use of campaign funds for legal costs, ELEC indicated that the rule was intended to "promote public confidence that contributed campaign funds are being expended in accordance with campaign and officeholding purposes." 29 N.J.R. 5056(a) (Dec. 1, 1997). These policies are consistent with the general goals of the Act as reflected in its legislative history. "Regulations adopted by an agency pursuant to a legislative mandate are presumed to be valid. We will defer to an agency's interpretation of a statute unless it is `plainly unreasonable.'" Reilly v. AAA Mid-Atlantic Ins. Co. of New Jersey, 194 N.J. 474, 485, 946 A.2d 564 (2008) (citations omitted); Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256 (1992).
There is nothing "plainly unreasonable" in ELEC's construction of the Act or in the agency's interpretation of its own regulation, N.J.A.C. 19:25-6.10. We find no *420 reason to depart here from our usual rule of deference to the agency's construction of the legislation it is charged with enforcing. See In re Contest of the Democratic Primary Election of June 3, 2003, 367 N.J.Super. 261, 281, 842 A.2d 820 (App. Div.2004).[6]
Appellant urges that ELEC's opinion is inconsistent with the agency's prior advisory opinions permitting expenditure of campaign funds for a candidate's legal defense in certain civil actions, and is inconsistent with the regulation reflecting those opinions, N.J.A.C. 19:25-6.10. In particular, appellant contends that the agency previously permitted campaign funds to be used to defend against a potential libel action threatened by a political rival, and to defend a State Senator against ethics charges filed at the behest of a lobbying group.
In a very brief letter dated April 3, 1980, the agency's legal counsel responded to a request for an advisory opinion on behalf of several candidates for municipal office "concerning the application of [former] N.J.A.C. 19:25-7.2 to attorneys' fees incurred in respect to a threatened libel suit." The threat occurred during a municipal election campaign and was directed at the candidates because of statements made in their campaign materials. They inquired as to whether they could use campaign funds to pay legal expenses incurred in settling the dispute during the campaign. In that limited context, the agency's legal counsel advised the inquirer that the expenditure was permissible "[i]n view of the relationship of the threatened litigation to the election campaign."
In Advisory Opinion No. 13-1995, dated January 4, 1996, the agency permitted Senator Cardinale to use campaign funds to defend himself against an ethics complaint pending before the Joint Legislative Committee on Ethical Standards. The complaint was initiated by the New Jersey Chiropractic Society "concerning a fundraising solicitation" for a political action committee. ELEC concluded that "[s]ince candidate committee funds may be used to achieve election to office, it appears consistent that [N.J.S.A. 19:44A-11.2a(6)] be understood to permit use of those same funds for an officeholder to defend his fitness for office before the very body that has specific statutory authority to adjudicate that fitness." The letter specifically indicated that "nothing contained in this opinion is intended to serve as authority for permitting the use of candidate committee funds for the legal defense of an officeholder facing any civil or criminal charge in any court of law or other forum."
Neither of the advisory opinions on which appellant relies involved defense of a criminal prosecution. Moreover, both matters involved civil charges filed by private groups or individuals for arguably partisan reasons. The libel charges arose during an election campaign and were lodged by a political rival; defense against the allegations could fairly be characterized as an expense of the municipal candidates' campaign. Similarly, the ethics charges against Senator Cardinale were initiated by a private interest group. Neither matter is comparable to a criminal prosecution filed by the United States Attorney, and even if they had some binding precedential value, neither advisory opinion *421 would preclude ELEC from reaching a different result in this case.
Nor does N.J.A.C. 19:25-6.10(a), which is consistent with those advisory opinions, preclude the result reached here. However, we need not decide whether the civil legal expenses permitted by section 6.10(a) are consistent with the Act. That issue is not before us on this appeal.
Finally, while we affirm the agency's decision, we observe that in light of the importance of the issue, both those subject to the Act and the public at large might be well-served if the agency were to adopt a regulation addressing the use of campaign funds to pay for criminal defense costs, instead of leaving the matter to case-by-case adjudication.
Affirmed.
NOTES
[1] The request to ELEC was made in a letter from counsel for "State Senator Wayne Bryant." This appeal was filed by the Senator's single candidate campaign committee, the Friends of Senator Wayne R. Bryant. No issue has been raised as to the organization's standing to prosecute this appeal. We will refer to appellant as "Senator Bryant."
[2] The Act authorizes ELEC to issue advisory opinions:

The commission through its legal counsel is authorized to render advisory opinions as to whether a given set of facts and circumstances would constitute a violation of any of the provisions of this act, or whether a given set of facts and circumstances would render any person subject to any of the reporting requirements of this act.
[N.J.S.A. 19:44A-6f.]
[3] The prohibition against "personal use" is currently codified at N.J.A.C. 19:25-6.5. See 25 N.J.R. 3436-37 (August 2, 1993)(proposing amendment of regulation); 25 N.J.R. 4759 (October 18, 1993) (adopting amendment). N.J.A.C. 19:25-6.5(c) took its current form when the regulations were again amended in 1994. See 26 N.J.R. 2755 (July 5, 1994)(proposal); 26 N.J.R. 4215 (October 17, 1994)(adoption).
[4] The agency also amended its more general regulation on the use of campaign funds to reflect the six uses permitted by N.J.S.A. 19:44A-11.2(a). See N.J.A.C. 19:25-6.5(a).
[5] We emphasize that our holding is limited to the defense of charges filed by federal or state law enforcement agencies alleging corruption in office. We do not address, for example, criminal complaints filed by private citizens against a candidate during the heat of a political campaign.
[6] No party has argued that ELEC's advisory opinion is not appealable. See In re Proposed Xanadu Redevelopment Project, 402 N.J.Super. 607, 630-31, 955 A.2d 976 (App.Div.2008). We are inclined to regard it as analogous to a final declaratory judgment which is appealable as of right. See also New Jersey Civil Serv. Ass'n v. State, 88 N.J. 605, 611-12, 443 A.2d 1070 (1982). If it were not, we would grant leave to appeal in light of the public importance of the issue. See R. 2:4-4(b)(2).