989 A.2d 1254

IN RE ELECTION LAW ENFORCEMENT COMMISSION
ADVISORY OPINION NO. 01–2008.

Argued November 9, 2009—Decided March 8, 2010.

*Angelo J. Genova* argued the cause for appellant Friends of Senator Wayne R. Bryant (*Sterns & Weinroth* and *Genova, Burns & Vernoia,* attorneys; *Richard K. Weinroth,* of counsel; *Robert P. Zoller, Christopher E. Torkelson,* and *Grace S. Power,* on the brief).

*James P. Wyse* argued the cause for respondent New Jersey Election Law Enforcement Commission (*Herold and Haines,* attorneys; *Mr. Wyse, Craig S. Provorny,* and *Daniel E. Bryer,* on the brief).

Justice ALBIN delivered the opinion of the Court.

Former State Senator Wayne R. Bryant sought an advisory opinion from the New Jersey Election Law Enforcement Commission (ELEC) to allow him to use campaign funds to defray expenses related to his defense of criminal corruption charges returned by a federal grand jury. ELEC determined that the use of campaign funds for that purpose did not constitute "the payment of ordinary and necessary expenses of holding public office" and therefore would violate *N.J.S.A.* 19:44A–11.2(a)(6) of the New Jersey Campaign Contributions and Expenditures Reporting Act

(Campaign Contributions Act), *N.J.S.A.* 19:44A–1 to –47. The Appellate Division upheld ELEC's ruling, finding that its interpretation of the statute was not "plainly unreasonable." *In re Election Law Enforcement Comm'n Advisory Op. No. 01–2008,* 404 *N.J.Super.* 29, 39, 960 *A.*2d 413 (App.Div.2008).

We affirm. ELEC's interpretation of *N.J.S.A.* 19:44A–11.2(a)(6) is not plainly unreasonable. We thus conclude that an "ordinary" expense of holding public office does not include legal costs incurred defending against criminal fraud and bribery charges set forth in a federal indictment.

## I.

### A.

Wayne R. Bryant served in the New Jersey Senate representing the Fifth Legislative District from 1995 until January 8, 2008. Although he did not run for re-election in 2007, several years earlier he had designated "Friends of Senator Wayne R. Bryant" as his single candidate committee fund for the 2007 primary election. As of January 2008, that fund retained $640,221 in campaign deposits.

In March 2007, a federal grand jury returned an indictment charging Senator Bryant in thirteen counts with engaging in a scheme to deprive the State of New Jersey and its citizens of the Senator's honest services, 18 *U.S.C.* §§ 1341, 1343, and 1346; solicitation and acceptance of a corrupt thing of value involving an organization receiving federal funds, 18 *U.S.C.* § 666; and engaging in a scheme to defraud the New Jersey Division of Pensions and Benefits of money and property, 18 *U.S.C.* § 1341. The indictment alleged that the School of Osteopathic Medicine of the University of Medicine and Dentistry of New Jersey placed Senator Bryant on its payroll in a do-little job and allowed him to fraudulently increase his state pension benefits in exchange for the Senator using his official position to direct funding to the

school.[1]  The indictment additionally alleged that Senator Bryant received public monies and credit towards an inflated state pension for no-show or do-little jobs with the Gloucester County Board of Social Services and Rutgers–Camden Law School.

Bryant pled not guilty to the charges.  The District Court dismissed one count,[2] and the remaining twelve counts of the indictment were tried to a jury.  After an eight-week trial, ending on November 18, 2008, the jury found Bryant guilty on all charges.

## B.

In December 2007, Bryant's single candidate committee fund, "Friends of Senator Wayne R. Bryant," sought an advisory opinion from the New Jersey Election Law Enforcement Commission (ELEC) that would allow the fund to pay the legal costs of defending against the federal criminal charges.[3]  Bryant maintained that the costs relating to his criminal defense were "ordinary and necessary expenses of holding public office"—a permissible use of campaign funds under *N.J.S.A.* 19:44A–11.2(a)(6).[4]

In Advisory Opinion 01–2008, dated January 28, 2008, ELEC ruled that the use of campaign funds [5] to cover the costs of a defense to a federal criminal indictment would violate both

---

[1] Senator Bryant served as the sole Chairman of the Senate Budget and Appropriations Committee from 2004–2006.

[2] The District Court dismissed the count alleging that Bryant corruptly received benefits through his employment with Rutgers–Camden Law School.

[3] For ease of reference, we use "Friends of Senator Wayne R. Bryant" and "Bryant" interchangeably.

[4] Bryant's counsel advanced his arguments to ELEC by letter dated December 21, 2007, and in a public presentation before ELEC on January 15, 2008.

[5] Throughout the opinion, we use the phrase "campaign funds" to mean monies held in a single "candidate committee" fund.  *See N.J.S.A.* 19:44A–3(q)–(r) (defining "candidate committee" and "joint candidate committee").

*N.J.S.A.* 19:44A–11.2 and regulations promulgated to enforce the statute, *N.J.A.C.* 19:25–6.5 to –6.10. ELEC found that use of campaign funds to defend against a criminal indictment "is not an 'ordinary and necessary expense' of an officeholder and therefore is not a permissible use" pursuant to *N.J.S.A.* 19:44A–11.2(a)(6). In reviewing the statute, ELEC determined that expenses related to the defense of a criminal indictment could not be considered "ordinary" because such expenses are not "normally incurred by an officeholder," nor could they be considered "necessary" to the discharge of the officeholder's duties to his constituents. ELEC also noted that Bryant's intended use of campaign funds did not meet the regulatory definition of "ordinary and necessary expenses of holding public office," which is "any expense that reasonably promotes or carries out the responsibilities of a person holding elective public office," *N.J.A.C.* 19:25–6.7(a). Indeed, ELEC believed that a contributor would not view the use of campaign funds for criminal defense purposes "as an expense that 'reasonably promotes' an office holding purpose."

ELEC also deemed the use of campaign funds in defense of a criminal indictment to be different from other uses ELEC has deemed permissible, such as covering the defense of a defamation lawsuit brought against a candidate or officeholder, Advisory Op. 12–1980, or the defense of an action brought before the Joint Legislative Committee on Ethical Standards, Advisory Op. 13–1995. *See N.J.A.C.* 19:25–6.10(a) (codifying those advisory opinions). ELEC further declared that expanding the use of campaign funds for the defense of a criminal indictment would be a "distortion" of the statutory and regulatory "ordinary and necessary" standard.

Last, ELEC rejected Bryant's arguments that it should follow decisions of the Federal Election Commission (FEC). ELEC pointed to textual differences in the comparable federal election and campaign finance laws and regulations. Moreover, it noted that because "FEC opinions interpret federal statutes [, they] are

not controlling over New Jersey's regulation of campaign finance activity for State elections."

## C.

The Appellate Division affirmed ELEC's decision in a thorough and well-reasoned opinion authored by Judge Reisner. *In re Election Law Enforcement Comm'n Advisory Op. No. 01–2008,* 404 *N.J.Super.* 29, 960 *A.2d* 413 (App.Div.2008). The appellate panel recognized that courts typically should defer to a state agency's interpretation of statutes and implementing regulations that fall within a legislative scheme the agency is charged with construing and enforcing. *Id.* at 39, 960 *A.2d* 413. An appellate court must abide by that rule of deference unless the agency's interpretation is " 'plainly unreasonable.' " *Ibid.* (quoting *Reilly v. AAA Mid–Atlantic Ins. Co. of New Jersey,* 194 *N.J.* 474, 485, 946 *A.2d* 564 (2008)). In this case, the panel found "nothing 'plainly unreasonable' in ELEC's construction of the [Campaign Contributions] Act or in the agency's interpretation of its own regulation, *N.J.A.C.* 19:25–6.10." *Id.* at 39, 960 *A.2d* 413.

Moreover, the panel rejected Bryant's comparisons to the Federal Election Campaign Act (FECA), 2 *U.S.C.* §§ 431 to 457, federal campaign regulations, or decisions of the Federal Election Commission (FEC). *Id.* at 36–39, 960 *A.2d* 413. First, the panel determined that *N.J.S.A.* 19:44A–11.2(a)(6) was not patterned after the FECA, finding that "[a]lthough the federal and state enactments do share some of the same terminology, the federal law is more broadly worded." *Id.* at 38–39, 960 *A.2d* 413. Second, the panel noted that "the history of the ELEC regulations is void of any indication that ELEC modeled its regulations after the FEC rules." *Id.* at 39, 960 *A.2d* 413.

The panel also did not find the use of campaign funds in defense of a federal criminal prosecution comparable to the use of such funds either to defend a candidate against libel charges made by a political rival during a campaign or to defend an officeholder against ethics charges filed by a lobbying group. *Id.* at 40–41, 960

*A*.2d 413. As the panel observed, the expenditure of campaign funds in those latter cases was sanctioned by ELEC in advisory opinions. *Ibid.* The holdings of those opinions are now codified in *N.J.A.C.* 19:25–6.10(a). *Ibid.* Because only Bryant's case was before it, the panel emphasized that it did not have to "decide whether the civil legal expenses permitted by section 6.10(a) are consistent with the [Campaign Contributions] Act." *Id.* at 41, 960 *A*.2d 413.

Finally, the panel suggested that the public "might be well-served if [ELEC] were to adopt a regulation addressing the use of campaign funds to pay for criminal defense costs, instead of leaving the matter to case-by-case adjudication." [6] *Ibid.*

We granted Bryant's petition for certification. 198 *N.J.* 473, 968 *A*.2d 1189 (2009).

## II.

The question before us is whether ELEC properly construed the Campaign Contributions Act and the regulations implementing that Act when it denied Senator Bryant's request to use campaign funds to cover his legal expenses in defending against official corruption charges in a federal criminal indictment. In answering that question, we first address the appellate standard of review of a decision of a state agency, such as ELEC. Next, we look to the language of the Act and its regulations to resolve the disputed interpretations raised by Bryant and ELEC.

## A.

The Election Law Enforcement Commission has been charged by the Legislature with enforcing the provisions of the New

---

[6] ELEC adopted the panel's recommendation and amended *N.J.A.C.* 19:25–6.10(b), effective May 18, 2009. *See* 41 *N.J.R.* 393(a) (Jan. 20, 2009); 41 *N.J.R.* 2142(b) (May 18, 2009). *N.J.A.C.* 19:25–6.10(b) now specifically prohibits the use of campaign funds to pay "legal fees and expenses for defense of a candidate or officeholder, who is the subject of a criminal inquiry or criminal investigation, or defense of a criminal indictment or other criminal proceeding."

Jersey Campaign Contributions and Expenditures Reporting Act, *N.J.S.A.* 19:44A–1 to –47. *N.J.S.A.* 19:44A–6.[7] Among the powers delegated to ELEC is the authority to "promulgate such regulations ... necessary to implement the [Act's] provisions," *N.J.S.A.* 19:44A–6(b), and "to render advisory opinions as to whether a given set of facts and circumstances would constitute a violation of [the Act]," *N.J.S.A.* 19:44A–6(f).

Generally, an appellate court should give considerable weight to a state agency's interpretation of a statutory scheme that the legislature has entrusted to the agency to administer. *Richardson v. Bd. of Trs., Police and Firemen's Ret. Sys.*, 192 *N.J.* 189, 196, 927 *A.*2d 543 (2007). This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise. *See Kasper v. Bd. of Trs. of the Teachers' Pension and Annuity Fund*, 164 *N.J.* 564, 580–81, 754 *A.*2d 525 (2000). Moreover, regulations promulgated by an agency in furtherance of a statutory scheme it is charged with enforcing are presumed to be valid. *See Reilly v. AAA Mid–Atlantic Ins. Co. of New Jersey*, 194 *N.J.* 474, 485, 946 *A.*2d 564 (2008). We will defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is "plainly unreasonable." *Ibid.* (citation and internal quotation marks omitted); *see also In re Freshwater Wetlands Prot. Act Rules*, 180 *N.J.* 478, 488–89, 852 *A.*2d 1083 (2004).

Every exercise of statutory interpretation is nothing more than an effort to effectuate the intent of the Legislature. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). In

---

[7] ELEC consists of four members, appointed by the Governor with the advice and consent of the Senate, who serve for three-year terms. *N.J.S.A.* 19:44A–5. "No more than two members shall belong to the same political party, and no person holding a public office or an office in any political party" is eligible for appointment. *Ibid.*

determining whether ELEC's interpretation of the Campaign Contributions Act was "plainly unreasonable," we necessarily must first turn to the words of the statute, "giving them their ordinary and commonsense meaning." *State v. Gelman*, 195 *N.J.* 475, 482, 950 *A.*2d 879 (2008); *see also N.J.S.A.* 1:1–1 (stating that "words and phrases shall be read and construed with their context, and ... be given their generally accepted meaning, according to the approved usage of the language"). If the statutory words manifest the Legislature's intent, we ordinarily look no further. *Di-Prospero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039. However, we may resort to extrinsic evidence, such as legislative history, if a plain reading of the statute would lead to a result that is either absurd or at odds with the overall statutory scheme. *Ibid.*

We therefore begin by examining the language of *N.J.S.A.* 19:44A–11.2(a) of the Campaign Contributions Act.

## B.

*N.J.S.A.* 19:44A–11.2(a) limits the use of contributions received by a candidate or candidate committee [8] to six enumerated categories: (1) "payment of campaign expenses"; (2) "contributions to [certain] charitable organization[s]"; (3) transmittal to other specified candidate, political, or legislative committees; (4) "payment of the overhead and administrative expenses related to the operation of the candidate committee"; (5) "pro rata repayment of contributors"; or (6) "payment of ordinary and necessary expenses of holding public office." *N.J.S.A.* 19:44A–11.2(a). The parties agree that category six is the only provision that applies to this case.

The statute permits Bryant to use funds from "Friends of Senator Wayne R. Bryant," his single candidate committee, to pay the "ordinary and necessary expenses of holding public office."

---

[8] This provision also regulates the use of contributions received by "a joint candidates committee or a legislative leadership committee." *N.J.S.A.* 19:44A–11.2(a).

*N.J.S.A.* 19:44A–11.2(a)(6). The issue here is whether defraying legal expenses related to defending against a federal criminal indictment alleging official corruption is an *"ordinary* and necessary expense[ ] of holding public office." *Ibid.* (emphasis added).

Because the word "ordinary" is not defined in the statute, we must consider its "generally accepted meaning, according to the approved usage of the language." *N.J.S.A.* 1:1–1. "Ordinary" has been defined as "customary[,] usual[,] normal," *Webster's Unabridged Dictionary of the English Language* 1363 (2001), and as "[o]ccurring in the regular course of events," *Black's Law Dictionary* 1209 (9th ed.2009). Additionally, ELEC has promulgated a regulation defining the term "ordinary and necessary expenses of holding public office." *N.J.A.C.* 19:25–6.7(a). According to the regulation, that term "means any expense that reasonably promotes or carries out the responsibilities of a person holding elective public office." *Ibid.*

Despite blaring headlines that announce the most recent prosecution and conviction of a public official, we have yet to reach the point when it can be said that defending against a federal or state criminal indictment alleging corrupt practices is an "ordinary" expense of holding public office. A grand jury indictment is not a customary, or usual, or normal incident of holding public office, nor does it occur in the regular course of events. The vast majority of elected public officials carry out their duties honestly and honorably and will not, in the course of their long careers, be the target of a criminal prosecution. We cannot conclude that the Legislature intended that defending against a federal or state criminal indictment would be an ordinary incident of holding public office, or that the use of campaign funds to cover such defense costs would be an "expense that *reasonably* promotes or carries out the responsibilities of a person holding elective public office," *N.J.A.C.* 19:25–6.7(a) (emphasis added).

Moreover, contributors to a campaign for elective office—reading *N.J.S.A.* 19:44A–11.2(a)—would hardly contemplate that their donations are amassed for a potential criminal defense fund.

Contributors do not expect that their candidate's election will be a stepping stone to a criminal indictment. *See Ad Hoc Comm'n on Legislative Ethics and Campaign Fin., Report to the President of the Senate, the Speaker of the General Assembly and Members of the New Jersey Legislature,* at 16 (Oct. 22, 1990) [hereinafter *Rosenthal Commission Report*]; ELEC Advisory Op. 01–2008, 4 (2008).

## C.

Additionally, none of the regulations implementing the Campaign Contributions Act support Bryant's argument. For example, *N.J.A.C.* 19:25–6.5 is the mirror image of its enabling statute, *N.J.S.A.* 19:44A–11.2(a), and provides the same six permissible uses of campaign funds as the statute. *See N.J.A.C.* 19:25–6.5(a)(6) (stating that contributions received by candidate committee may be used for "[t]he payment of ordinary and necessary expenses of holding public office, as provided in *N.J.A.C.* 19:25–6.7"). As part of the comprehensive regulatory structure, *N.J.A.C.* 19:25–6.10 permits the use of campaign funds for "legal fees and expenses" in specified instances, but none include the defense of a criminal indictment. Further, campaign funds cannot be used to pay for legal fees "in connection with the candidate or officeholder's personal or business affairs, or which would otherwise qualify as 'personal use' under *N.J.A.C.* 19:25–6.5(c)." [9] *N.J.A.C.* 19:25–6.10(c).[10] The regulations, singly and collectively, do not advance Bryant's position that he may use campaign funds to finance his criminal defense. These regulations, if anything,

---

[9] Personal use of campaign funds is defined as "any use of contributions to pay or fulfill a commitment, obligation or expense of any person that would arise or exist irrespective of the candidate's campaign or irrespective of the candidate's ordinary and necessary expense of holding public office." *N.J.A.C.* 19:25–6.5(c).

[10] *N.J.A.C.* 19:25–6.10 was amended during the course of Bryant's appeal. Prior to the amendment, subsection (c) was found in subsection (b). *See* 41 *N.J.R.* 393(a) (Jan. 20, 2009); 41 *N.J.R.* 2142(b) (May 18, 2009).

fortify ELEC's interpretation of the statutory language governing the permissible use of campaign funds.

### D.

For the sake of completeness, we add that the legislative history of the Campaign Contributions Act is not at odds with ELEC's commonsense interpretation of *N.J.S.A.* 19:44A–11.2. That statute was enacted by the Legislature in 1993 as part of a comprehensive set of amendments to the Campaign Contributions Act: *L.* 1993, *c.* 65, § 17. Those amendments reflected recommendations made in the 1990 report of the Ad Hoc Commission on Legislative Ethics and Campaign Finance, also known as the Rosenthal Commission. *See Rosenthal Commission Report, supra.* The Rosenthal Commission detailed the wide-ranging deficiencies in the then-existing campaign finance system, which, in its opinion, were causing an "insidious erosion of public confidence" that was harmful to "the democratic tradition in this State." *Id.* at 3.

Before enactment of *N.J.S.A.* 19:44A–11.2, the permissible use of campaign funds was limited by regulation, not by statute. *Id.* at 16. Because "political contributions were donated to a candidate or officeholder for one purpose only: to get that person elected or reelected," the Commission maintained that "any other use of this money must be carefully controlled." *Ibid.* The Commission believed that, under the then-existing statutory structure, the "allowable uses of political contributions [were] unclear and potentially open to abuse." *Id.* at 3. To remedy that problem, the Commission recommended enactment of a statute that would restrict the use of campaign funds to five enumerated purposes, which are now codified at *N.J.S.A.* 19:44A–11.2(a)(1)–(5). *See id.* at 16–17. Permitting the use of campaign funds for the "payment of ordinary and necessary expenses of holding public office" was not one of the recommendations made by the Commission. *Ibid.*

The State Assembly introduced legislation that mirrored the five permissible uses for campaign contributions suggested by the Rosenthal Commission. *See* Assem. 100 (Sponsors' Statement), 205th Leg., at 39 (N.J. pre-filed for 1992); Assem. 196, 205th Leg., at 1–2 (N.J. pre-filed for 1992); Assem. 869, 205th Leg., at 1–2 (N.J.1992). However, pursuant to a floor amendment, a sixth use was added: "the payment of ordinary and necessary expenses of holding public office." *See* Assem. Amends. to Assem. Comm. Substitute for Assem., Nos. 100, 195, 196, 646, 659 and 869, 205th Leg., at 17, 27 (N.J. May 28, 1992). The final legislation incorporated that change, which is now codified at *N.J.S.A.* 19:44A–11.2(a)(6). *L.* 1993, *c.* 65, § 17. The legislative history sheds no light on why (a)(6) was added to the five permissible uses of campaign funds recommended by the Rosenthal Commission.

We only know that the overriding objective of the 1993 Amendments to the Campaign Contributions Act was to restore public confidence in the collection, reporting, and use of campaign funds, and to ensure that campaign funds were not expended for purposes unrelated to an election or holding office. *See Rosenthal Commission Report, supra,* at 3. Ultimately, we must return to ELEC's construction of the simple language of the statute.

## III.

ELEC's interpretation of *N.J.S.A.* 19:44A–11.2(a)(6), which prohibited the use of campaign funds to finance a legal defense against a federal indictment charging corruption, is not plainly unreasonable. Accordingly, we must defer to ELEC's decision. In doing so, we see no need to pass on whether other uses of campaign funds approved or disapproved by ELEC in previous advisory opinions or in current regulations are permissible under *N.J.S.A.* 19:44A–11.2(a)(6).[11] Those matters are not before us.

---

[11] *N.J.A.C.* 19:25–6.10(a) provides that campaign funds can be used for certain "reasonable fees and expenses of legal representation" including:

We also reject Senator Bryant's argument that not permitting him to use his campaign funds to finance his defense against the federal charges is at odds with the presumption of innocence. That the Constitution presumes Bryant and every accused to be innocent bears no relevance to whether Bryant can use campaign funds for an impermissible purpose.

Last, for reasons amply stated by the Appellate Division, 404 *N.J.Super.* at 37–39, 960 *A.*2d 413, we reject Senator Bryant's arguments that we should follow decisions of the Federal Election Commission construing the Federal Election Campaign Act. There is nothing in the legislative history of *N.J.S.A.* 19:44A–11.2(a)(6) intimating that that enactment was modeled after provisions of the FECA. Although there are similarities in language between the state and federal election and campaign finance laws and their regulations, there are differences as well. Those differences, spelled out in detail by the Appellate Division, 404 *N.J.Super.* at 37–39, 960 *A.*2d 413, do not suggest that we should look to federal law in construing our own statute. We would not be bound by decisions of the Federal Election Commission even if the federal and state statutory and regulatory language were the same. In the end, we are responsible for enforcing the will of the New Jersey Legislature, which, in an effort to restore public

---

1. Litigation directly related to a recount proceeding ... or an election contest ...;

2. The defense of a defamation action against the candidate or officeholder whose campaign funds are to be used to pay such expenses, arising directly from the candidate's campaign for public office or from activities of the officeholder directly related to the discharge of the duties of holding public office;

3. The defense of a civil action or administrative proceeding alleging a violation of the [Campaign Contributions] Act ...; and

4. The defense of an action or proceeding before the Joint Legislative Committee on Ethical Standards or similar public body....

This regulation was promulgated in 1998, codifying some prior ELEC decisions including Advisory Op. No. 13–1995, now codified at (a)(4), and Advisory Op. No. 12–1980, now codified at (a)(2). *See* 29 *N.J.R.* 5056(a) (Dec. 1, 1997); 30 *N.J.R.* 862(a) (Mar. 2, 1998). *See also N.J.A.C.* 19:25–6.10(b)–(c) (identifying disapproved uses of funds for legal expenses).

confidence in this State's campaign finance laws, sought to curtail the misuse of contributions made to a candidate or candidate committee.

## IV.

We therefore affirm the judgment of the Appellate Division. ELEC's determination that, under *N.J.S.A.* 19:44A–11.2(a)(6), Senator Bryant could not use campaign funds to defray the costs of defending against a federal indictment was not plainly unreasonable. Simply put, expenditures in defense of a federal or state criminal indictment are not "ordinary and necessary expenses of holding public office" under *N.J.S.A.* 19:44A–11.2(a)(6).

*For affirmance*—Justices LONG, LaVECCHIA, ALBIN, HOENS and Judge STERN (t/a)—5.

*Opposed*—None.