**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0166-15T2

CAROL RYLE,

    Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS, SANDY RECOVERY
DIVISION,

    Respondent-Respondent.

_____

Submitted January 10, 2016 — Decided February 13, 2017

Before Judges Yannotti and Gilson.

On appeal from the Department of Community Affairs, Sandy Recovery Division, Agency Ref. No. SRP0042732.

Dunn Law, L.L.C., attorneys for appellant (Christopher S. Dunn, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Cameryn J. Hinton, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Carol Ryle appeals from a final agency decision

by the Department of Community Affairs (Department) denying her a

grant from the Landlord Rental Repair Program (LRRP) under the Sandy Recovery Program. We affirm because the Department's decision was not arbitrary, capricious, or unreasonable and because the decision was supported by substantial, credible evidence developed during a contested hearing at the Office of Administrative Law (OAL).

## I.

Petitioner and her husband own several properties, one of which they occupy and the others they rent. The home they occupy and one of their rental properties are located in Manahawkin and were damaged by Super Storm Sandy on October 29, 2012. The property at issue on this appeal is the rental property located in Manahawkin (the Property).

Petitioners represent that at the time Sandy struck, the Property was rented, albeit on an "informal month-to-month basis." After the storm, Petitioner and her husband oversaw repairs to the Property and, in April 2013, the tenant resumed occupancy of the Property. When the tenant moved back into the Property, however, petitioner knew that the Property still needed to be elevated.

In response to the damage caused by Sandy, the United States Department of Housing and Urban Development (HUD) provided funds to the Department for a variety of programs to assist affected New Jersey residents. Those funds came through community development

block grants.  The Department developed LRRP to restore residential rental properties damaged by Super Storm Sandy.

To be eligible for LRRP funds a number of requirements must be satisfied.  The Department developed and issued a manual and guidelines that set forth the eligibility requirements and procedures governing the operation and administration of LRRP. LRRP Program Guidelines (December 18, 2014), http://www.renewjerseystronger.org/wp-content/uploads/2014/09/ LRRP-Program-Guidelines-121814.pdf (Guidelines); LRRP Program Manual (December 18, 2014), http://www.renewjerseystronger.org /wp-content/uploads/2014/09/LRRP-Program-Manual-section-1-8- 121814.pdf (Manual).  For example, LRRP projects are required to comply with local, state, and federal construction and building standards.  Guidelines, supra, at 14.

LRRP funds can be distributed to reimburse costs already incurred or for prospective rehabilitation costs to be incurred. Id. at 7.  To be eligible for reimbursement of costs already incurred, the guidelines provide:

> The [l]andlord must provide documentation for reimbursement: a) proof of the work completed; and b) retain receipts for the amounts paid. Proof of the work completed will include:
>
> - Certificat[e] of Occupancy;
> - A copy of the construction contract and/or scope of work; and/or

A-0166-15T2

- Invoices from a [g]eneral [c]ontractor or tradesperson (such as electricians, painters, etc.) or from materials suppliers, hardware stores or equipment rental firms.

[Manual, supra, at 5.]

To be eligible for prospective rehabilitation costs, the LRRP guidelines state: "Landlords that apply to the LRRP and that have unit(s) occupied by a tenant with work not complete shall not be eligible for funding for the applicable unit(s)." Guidelines, supra, at 12; Manual, supra, at 14.

In August 2013, petitioner applied for funds from LRRP. At that time, petitioner represented that all storm-damage-repair work had been completed, the tenant had resumed occupancy, but the home still needed to be elevated. After submitting the initial application, petitioner met with representatives of the Department. The Department also sent a contractor to inspect the Property. The Department's contractor issued a report that estimated that just over $37,000 in work had been done at the Property and that just over $5000 in work remained to be done. The contractor also estimated that it would cost approximately an additional $47,000 to elevate the structure on the Property.

Following a long exchange of information and documentation, the Department sent petitioner a letter in June 2014, denying her application. In that letter, the Department explained that the

application was denied because there was a tenant residing at the Property at the time of the application and the work was not complete.

Petitioner administratively appealed that determination. In November 2014, the Department denied her initial appeal stating that the application was ineligible because:

> Pursuant to Section 1.3.2.4 - Vacancy Requirement/Partially Occupied Properties - landlords who apply to LRRP and have damaged units (defined as work not completed a[t] date of application submission) that are occupied by a tenant shall not be eligible for funding.

Petitioner then administratively appealed the November 2014 decision. The matter was transferred to the OAL and the Chief Administrative Law Judge (ALJ) conducted a hearing. Petitioner and her husband appeared and presented testimony at the hearing. They also submitted numerous exhibits, including certifications from the tenant and a neighbor. The Department appeared and opposed petitioner's appeal.

After considering the evidence presented, the ALJ affirmed the Department's denial of petitioner's LRRP application in an initial decision issued on June 9, 2015. In that decision, the ALJ made fact-findings and conclusions of law based on the LRRP's eligibility guidelines and program manual. The ALJ found that while petitioner had fulfilled "many" of the eligibility factors,

her application did not meet all of the necessary eligibility requirements. Specifically, the ALJ found that petitioner met "the basic eligibility criteria with regard to ownership, damage, year-round rental, and willingness to rent to households with low and moderate income." The ALJ, however, also found that petitioner had not shown that the repairs to the Property had been completed before the tenant reoccupied the Property in April 2013. In making that finding, the ALJ reasoned that although petitioner contested the completion issue, the LRRP guidelines required a certificate of occupancy and petitioner had failed to present such a certificate covering the time that the tenant reoccupied the Property in April 2013.

In addition, the ALJ found that the repairs to the Property were not complete because the structure on the Property still needed to be elevated. The elevation work, however, would require displacement of the tenant in contravention to the LRRP's guidelines. See Manual, supra, at 16.

Petitioner submitted exceptions to the initial decision, but the ALJ's initial decision became final on July 24, 2015, when the Department did not adopt, modify, or reject the initial decision. See N.J.S.A. 52:14B-10(c) (providing that if the referring agency does not adopt, modify, or reject an initial decision issued by

an ALJ within forty-five days, then the initial decision shall become the final decision of the agency).

                                II.

Petitioner now appeals the final agency decision. On this appeal, petitioner makes two arguments. First, she contends that it was an error to reject her application for failure to provide a certificate of occupancy. Second, she contends that the temporary relocation of a tenant for elevating a structure is allowed under the LRRP.

Our role in reviewing an administrative agency's final decision is limited. Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007). "We will not reverse an agency's decision unless: (1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Ibid. (citing In re Taylor, 158 N.J. 644, 656 (1999)). We "defer to an agency's interpretation of . . . [a] regulation, within the sphere of [its] authority, unless the interpretation is 'plainly unreasonable.'" U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (alterations in original) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). An appellate

court, however, is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." In re Taylor, supra, 158 N.J. at 658 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). Applying this well-established standard, we discern no basis for disturbing the Department's final agency decision in this matter.

Petitioner takes issue with the Department's reliance on the requirement for a certificate of occupancy to establish completion of repairs. In particular, petitioner argues that the local municipality did not require a certificate of occupancy for the tenant to resume use of the Property in April 2013. The ALJ, however, reasoned that the State Uniform Construction Code provides: "It shall be unlawful to change the use of any structure or portion thereof without the prior application for and issuance of a certificate of occupancy as herein provided." N.J.A.C. 5:23-2.6(b). The State code also provides that in the event of a conflict between the local code and the State code, "the more restrictive requirement of this [State] code . . . shall govern." N.J.A.C. 5:23-2.2(e). Thus, the ALJ went on to reason that without a certificate of occupancy, petitioner could not satisfy the completion requirements called for by the LRRP.

Applying our deferential standard of review, we discern no basis to disagree with the ALJ's interpretation of the guidelines,

as adopted by the Department. Moreover, we note that the question of whether the repair work had been completed prior to the tenancy was a disputed issue before the ALJ. The ALJ never found that petitioner proved that the repair work had been completed and that the only thing that was missing was the certificate of occupancy.

Next, the petitioner contends that she was eligible for funds to elevate the structure on the Property even if that elevation required the temporary relocation of the tenant. The Department rejected that position reasoning that the LRRP guidelines do not allow funds if the resulting work will displace existing tenants. In that regard, the LRRP guidelines state: "Landlords who apply to the LRRP and have damaged units (defined as work not completed at the time of the applicable submission) that are occupied by a tenant shall not be eligible for funding." Manual, supra, at 16. The Department adopted the ALJ's finding that because the elevation of the Property would displace the existing tenant, the Property did not qualify for LRRP funds.

Having considered the fact-findings made by the Department and applying our limited scope of review, we discern no basis for disturbing the Department's fact-findings and conclusions related to the elevation of the Property.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0166-15T2