┌─────────────────────────────────────────────────────────┐
│                **NOT FOR PUBLICATION WITHOUT THE**       │
│               **APPROVAL OF THE APPELLATE DIVISION**     │
│                                                          │
│  This opinion shall not "constitute precedent or be binding upon any court." │
│  Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R. 1:36-3. │
└─────────────────────────────────────────────────────────┘

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3713-16T1

WILLIAM RICHARDSON,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

    Respondent-Respondent.

_____

        Argued May 9, 2018 — Decided June 28, 2018

        Before Judges Koblitz and Suter.

        On appeal from the Board of Trustees of the
        Police and Firemen's Retirement System,
        Department of Treasury, PFRS No. 3-10-51878.

        John D. Feeley argued the cause for appellant
        (Feeley & LaRocca, LLC, attorneys; Pablo N.
        Blanco, of counsel; John D. Feeley and Pablo
        N. Blanco, on the brief).

        Sadyhe T. Bradley, Deputy Attorney General,
        argued the cause for respondent (Gurbir S.
        Grewal, Attorney General, attorney; Melissa
        Dutton Schaffer, Assistant Attorney General,
        of counsel; Sadyhe T. Bradley, on the brief).

PER CURIAM

Petitioner William Richardson appeals from the April 10, 2017 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), adopting the decision of an administrative law judge (ALJ) who denied petitioner's application for accidental disability retirement benefits. We affirm.

I

Petitioner was a police officer employed by the City of Newark. On March 20, 2015, he filed an application with the PFRS for accidental disability retirement benefits. The application listed two events, one in 2007 and another in 2013, that Richardson claimed caused him to suffer from post-traumatic stress disorder (PTSD). On January 12, 2016, the Board granted Richardson ordinary disability retirement benefits because he was "totally and permanently disabled" from PTSD and could no longer perform the full duties of a police officer. It denied his request for accidental disability retirement benefits. Richardson appealed, and the Board transferred the matter to the Office of Administrative Law (OAL) for a hearing.

Petitioner testified at the hearing before an ALJ about three events that he alleged were the cause of his PTSD. In a comprehensive written decision on March 24, 2017, the ALJ concluded that petitioner did not qualify for an accidental disability retirement pension because the incidents cited by petitioner were

not "undesigned or unexpected" nor "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." On April 10, 2017, the Board adopted the ALJ's initial decision.

At the OAL hearing, petitioner testified he was employed as a Newark City police officer from 2002 to 2014. He was a patrol officer for about a year and then worked in the gang unit for seven years. He testified he would receive three to ten calls per week related to gang violence. He responded to anywhere between one to fifty "reports of shots fired" a week. He attended the police academy and had other training after the academy.

Petitioner listed incidents in 2013 and 2007 in support of his application for accidental retirement benefits. He testified at the OAL about a third incident in 2003.

In 2007, Richardson and other officers pursued a person in a vehicle who was driving erratically. When the driver pulled into a driveway, an officer told him to turn off the car. Instead, the driver backed up, ramming a police vehicle twice that was parked directly behind it. The driver pulled a gun from his waistband, pointed it at another officer and then at petitioner, without shooting. Richardson and another officer fired, striking the driver who ran out of the vehicle, leaving the gun, and collapsed. The driver's wounds were not mortal. No officers were shot.

Petitioner did not ask for treatment after the incident and returned to work. He testified that he "would have dreams about . . . what happened."

In 2013, Richardson and his partner were patrolling in an area of Newark he described as a "stronghold of drug activity." Their function was to "curb violence in that specific area." He observed two men "blocking public passage." When they approached the men, one turned and ran away after reaching in his waistband. His partner ran after him, turning the corner onto another street. The other man approached petitioner, and admitted he had marijuana in his possession. In seconds, petitioner heard shots coming from the direction where his partner had run. Before he reached the corner, petitioner heard more shots. He testified he "could hear the bullets come by." Petitioner "peeked out," ran around the corner and found his partner "in a daze" leaning up against a car, but uninjured. They both continued to pursue the suspect.

Petitioner testified the incident in 2013 "really affected" him. He "couldn't sleep" or "stop thinking about the incident," was experiencing nightmares, and was "sweating profusely." He was not treated.

In 2003, petitioner was in a patrol car responding to a "man with a weapon, shots fired" call, following behind a police vehicle. As the vehicles passed through an intersection, another

4

driver ran the red light, striking the police vehicle in front of petitioner, and caused it to overturn. Petitioner aided an officer injured in the accident who later died at the hospital. Petitioner was not injured, did not miss any days of work, and did not seek treatment. He testified that he thought about the 2003 incident "constantly" after the 2013 incident.

All of the expert witnesses testified that petitioner suffered from PTSD that had a delayed onset. They agreed he was permanently and totally disabled, unable to work as a police officer, that the PTSD resulted from his assigned duties, and was not the result of his negligence.

Dr. Eugene Stephenelli, a psychologist, testified that petitioner's PTSD was due to "continual exposure to traumatic events." He described that officers are "exposed to shootings all the time," and that "stress is cumulative." The 2013 incident was the trigger for petitioner's PTSD. Dr. Michael Bizzaro, a clinical social worker, testified that he diagnosed petitioner as suffering from PTSD delayed onset. This resulted from "repeated trauma" from the events that petitioner described. Dr. Daniel LoPreto, a clinical psychologist, testifying for the Board, said that petitioner's "current condition was essentially and substantially caused by" the 2013 work incident and that he was "totally and permanently disabled and unable to perform the safety sensitive

responsibilities of a police officer." However, he testified that this occurred from a single episode, the event in 2013.

The ALJ concluded "there was a delayed manifestation of the onset of PTSD" directly after the event in 2013. Petitioner's PTSD occurred as the "cumulative effect" of the events in 2003, 2007 and 2013 with the 2013 event the one that "created full blown PTSD." However, petitioner did not qualify for an accidental disability pension because none of the three incidents were "undesigned and unexpected" as required by Richardson,[1] although all the other requirements of Richardson were satisfied. The ALJ stated:

> That a pursued suspect may be armed and may draw on an officer is within the contemplation of an active pursuit situation which officers are trained to address as well as shooting at such a suspect and striking same. The same can be said for coming upon an automobile accident with a severely injured officer.

The ALJ found that petitioner had not met the Patterson[2] standards, concluding that none of the three events was "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." Patterson set

---

[1] Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007).

[2] Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29 (2008).

a high standard. "[T]o suggest that when a police officer [is] involved in an event where shots are exchanged in this day and age, but the officer and his partner are not physically injured in any way satisfies the Patterson standard, would significantly lower what is a deliberately high bar."

On appeal, petitioner argues that the events giving rise to these incidents satisfied the standards to qualify him for accidental disability retirement benefits because they were "undesigned and unexpected," and they were "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury."

## II

Our review of administrative agency action is limited. We generally "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson, 192 N.J. at 196. "Such deference has been specifically extended to state agencies that administer pension statutes," because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). We are not "bound by the

agency's interpretation of a statute or its determination of a strictly legal issue."  Richardson, 192 N.J. at 196 (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

The PFRS provides for both ordinary, N.J.S.A. 43:16A-6, and accidental, N.J.S.A. 43:16A-7(1), disability benefits.  "[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement."  Patterson, 194 N.J. at 43.  In Richardson, the Court held that a claimant for accidental disability retirement benefits must prove:

> 1. that he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
> a. identifiable as to time and place,
>
> b. undesigned and unexpected, and
>
> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson, 192 N.J. at 212-13.]

The Court defined a "traumatic event" as "essentially the same as what we historically understood an accident to be - an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Id. at 212.

A petitioner who has suffered a "permanent mental disability as a result of a mental stressor, without any physical impact," must meet an additional requirement to qualify for an accidental disability retirement. Patterson, 194 N.J. at 33. In Patterson, the Court held that

> [t]he disability must result from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person. By that addition, we achieve the important assurance that the traumatic event posited as the basis for an accidental disability pension is not inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury.

> [Id. at 34.]

In Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 33 (2011), the Court clarified that "once a member has experienced a qualifying incident- a 'terrifying or horror-

inducing event . . . ,'- the objective reasonableness standard"
has been met.  However, we have held that "the diagnostic criteria
for PTSD are not identical to the <u>Patterson</u> requirement."  <u>Thompson
v. Bd. of Trs., Teacher's Pension & Annuity Fund</u>, 449 N.J. Super.
478, 495 (App. Div. 2017), <u>aff'd o.b.</u>, __ N.J. __ (2018).  "[T]he
Supreme Court in <u>Patterson</u> . . . did not hold that any employee
who obtains a PTSD diagnosis qualifies for accidental disability
benefits."  <u>Ibid.</u>[3]

The Court has recently summarized as "two-step" the
appropriate analysis in cases of permanent mental incapacity
resulting from "an exclusively psychological trauma."  <u>Mount v.
Bd. of Trs., Police & Firemen's Ret. Sys.</u>, __ N.J. __, __ (2018)
(slip op. at 31).

> The court first determines whether the member
> directly experienced a "terrifying or horror-
> inducing event that involves actual or

---

[3]  "[T]he diagnostic criteria for PTSD includes the requirement
that the person

has been exposed to a traumatic event in which both of the
following were present:

(1) the person experienced, witnessed or was confronted with an
event or events that involved actual or threatened death or
serious injury, or a threat to the physical integrity of self or
others

(2) the person's response involved intense fear, helplessness or
horror."

[<u>Patterson</u>, 194 N.J. at 49 (quoting DSM-IV-TR at 467).]

threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person." Patterson, 195 N.J. at 50. . . . . If the event meets the Patterson test, the court then applies the Richardson factors to the member's application.

[Id. at 31-32.]

Petitioner must first satisfy Patterson. The 2007 and 2013 incidents both involved shootings. In the 2007 incident, the driver did not shoot at the officers; they shot him. The incident did not involve death or serious injury to a police officer, although the driver did point the gun at petitioner and his partner. In 2013, petitioner heard gun shots but he was not in the line of fire. The incident did not involve a death or injury. Petitioner did not list the 2003 incident in his accidental disability application. He worked for over a decade after it, without incident. It was only after the 2013 event that he began to think more about the 2003 accident. Petitioner observed the accident; he was not involved in it. He rendered aid to one of the victims who later died.

We agree that on the facts of these events, the Board did not act arbitrarily, capriciously or unreasonably in adopting the findings of the ALJ that the events were not such as to cause a reasonable officer in similar circumstances to suffer a disabling mental injury. This is not a case where there was physical

contact; it did not involve actual or threatened death to petitioner; it did not involve incidents outside his training, involve the shooting of a police officer or death to his partner.

Even if one or more of the events did qualify as terrifying or horrifying events for a police officer because of the threat of injury, petitioner must still satisfy Richardson's factors. See Mount, __ N.J. __ (slip op. at 32) (providing that once the Patterson standard is met, the officer must also satisfy the Richardson tests). In Russo, the Court stated "an employee who experiences a horrific event which falls within his job description and for which he has been trained will be unlikely to pass the 'undesigned and unexpected' test." 206 N.J. at 33. Recently, the Court has clarified that "the Board and a reviewing court must carefully consider not only the member's job responsibilities and training, but all aspects of the event itself. No single factor governs the analysis." Mount, __ N.J. __ (slip op. at 33).

Petitioner was a trained police officer. His duties involved making arrests and attending to motor vehicle accidents and investigations. Some of the accidents or investigations could be expected to involve serious injuries or fatalities. See Mount, __ N.J. __ (slip op. at 34). There was nothing here that was outside the scope of petitioner's general duties as a police officer. He was not put in a situation where he lacked equipment

or training. Petitioner had years of experience in the gang unit where he routinely responded to calls involving shots fired. Given his patrol duties he had reason to anticipate that violence might occur. We cannot say that the Board's decision was arbitrary, capricious or unreasonable, given his training, experience and employment as a police officer, in holding that the events of 2013, 2007 and 2003 were not "undesigned or unexpected."

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3713-16T1