**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0275-22

AMERICO ARZOLA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

> Argued February 27, 2024 – Decided April 9, 2024
>
> Before Judges Natali and Puglisi.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx7291.
>
> Arthur J. Murray argued the cause for appellant (Alterman & Associates, LLC, attorneys; Arthur J. Murray, on the brief).
>
> Juliana C. DeAngelis, Legal Counsel, argued the cause for respondent (Nels J. Lauritzen, Deputy Director, Legal Affairs, attorney; Juliana C. DeAngelis, on the brief).

PER CURIAM

Petitioner Americo Arzola appeals from the August 10, 2022 final administrative decision of the Board of Trustees (Board), Police and Firemen's Retirement System (PFRS) denying his application for accidental disability benefits. We affirm.

Petitioner began working for the Department of Corrections as a corrections officer recruit in June 2000 and became a senior correctional police officer about a year later. Prior to his employment, he attended the corrections academy for sixteen weeks and received training on physically engaging with and subduing inmates and handling physical situations. His job duties included "controlling the general conduct and behavior of inmates, preventing disturbances and escape attempts, and maintaining discipline and order." During his tenure as a correctional police officer, petitioner responded to approximately fifty to one hundred requests for assistance or "codes," some of which resulted in physical altercations with inmates.

According to the undisputed facts:

> On October 11, 2017, petitioner was working on a unit when an inmate became non-compliant with instructions given by petitioner's partner. The inmate did not respond to verbal commands. Petitioner grabbed the inmate but the inmate "got loose." The

A-0275-22

petitioner used force to bring the inmate to the ground. Petitioner felt pain and experienced a twisting or shifting injury in his left knee as they were standing and the inmate became combative and was attempting to loosen himself from petitioner's grip. The inmate's movement caused petitioner's knee "to move awkwardly."

Following this incident, petitioner underwent arthroscopic surgery of his left knee and became totally and permanently disabled from his employment. The Board granted petitioner ordinary disability retirement benefits but denied his application for accidental disability retirement benefits.

On petitioner's request, the Board transmitted the matter to the Office of Administrative Law (OAL) for a hearing, which was conducted by Administrative Law Judge (ALJ) Susan L. Olgiati. In addition to petitioner's testimony at the hearing, David Weiss, D.O., testified on behalf of petitioner and Jeffrey Lakin, M.D., testified on behalf of the Board.

Dr. Weiss was qualified as an expert in orthopedics, impairment and disability. He conducted an evaluation based on petitioner's clinical history, medical records, films, and an orthopedic examination. Dr. Weiss testified that petitioner had "some underlying pathology" dating back to 1990, when he had anterior cruciate ligament (ACL) reconstruction surgery with a medial

meniscectomy on his left knee. Petitioner did not have any further symptoms or knee problems until the October 2017 incident.

Dr. Weiss diagnosed petitioner's injury as a "post[-]traumatic internal derangement to the left knee with medial and lateral meniscus tears." He further found petitioner had "post[-]traumatic attenuated ACL ligament of the left knee, post[-]traumatic synovitis, a chronic post[-]traumatic patella femoral pain syndrome to the left knee, superimposed upon pre-existing age[-]related chondromalacia patella femoral joint." Dr. Weiss explained patella femoral pain syndrome meant petitioner was already experiencing knee pain, which could be seen in MRIs. He also stated petitioner had "aggravated pre-existing age related degenerative joint disease of the left knee," with "spurring" visible in the MRIs. The "spurring" pre-dated the October 2017 incident.

Dr. Weiss testified that, although petitioner had these conditions prior to the incident, they were not severe enough to require surgery and did not preclude him from completing the academy and working as a corrections officer for seventeen years. He opined it was "obvious" the October 2017 incident was the substantial producing cause of petitioner's disability.

Dr. Lakin was qualified as an expert in orthopedics and orthopedic surgery. He also conducted an evaluation based on petitioner's history, records

4

and an examination. Dr. Lakin believed petitioner's prior knee surgery was "significant." He explained that the ACL provides stability to the knee and when it is injured, a surgeon replaces the original ligament with a graft; in petitioner's case, his patella tendon was used to replace his ACL. Dr. Lakin testified that although the patella tendon is one of the better grafts utilized, it is not as strong and does not have the same characteristics as the ACL. He further explained that "almost any person" who has reconstructive knee surgery will develop arthritis typically after ten to twenty years.

Dr. Lakin testified petitioner's MRIs showed loss and irregularity of cartilage along with longstanding arthritis. He also found a decrease in the cushion of the knee, likely resulting from prior surgery where it had been removed. The MRI showed longstanding chronic changes but no signs of acute injury.

Dr. Lakin opined petitioner's disability was not a direct result of the October 2017 incident but rather was an aggravation or exacerbation of a pre-existing condition. Although he acknowledged on cross-examination that petitioner did not exhibit any impairment prior to the October 2017 incident, he concluded petitioner's arthritis would have eventually disabled him.

A-0275-22

On June 22, 2022, the ALJ issued her initial decision. She found petitioner, Dr. Weiss and Dr. Lakin all testified credibly, but gave Dr. Lakin's testimony "somewhat greater weight" because unlike Dr. Weiss, he was a practicing orthopedic surgeon.

The ALJ first addressed whether petitioner had established the accident was an "undesigned and unexpected" traumatic event:

> As a senior correctional police officer, petitioner's duties included controlling the general conduct and behavior of inmates, preventing disturbances and escape attempts, and maintaining discipline and order. Here, petitioner's actions in attempting to secure a non-compliant inmate fall squarely within his job duties. Additionally, in attempting to secure the inmate, petitioner employed the training he received at the academy. Further, this was not the first time that petitioner had been engaged in a physical encounter with an inmate. Petitioner testified that throughout his career, he had responded to approximately [50] to 100 codes, some of which resulted in physical altercations with inmates. During those instances, petitioner attempted to use the training he received at the academy. Thus, contrary to petitioner's arguments there was nothing unusual or unexpected about the October 2017 incident in which he, as a senior correctional police officer, had to restrain a non-compliant, combative inmate.

In support of his application, petitioner cited cases in which a correctional police officer was disabled as a result of an incident involving an inmate, and

6

was deemed eligible for accidental disability benefits. The ALJ distinguished those cases from this one:

> [T]here is no evidence in the record[] demonstrating that the inmate here engaged in any violent behavior akin to that experience[d] in the cases cited by petitioner. Rather, the evidence, including the testimony and written report of petitioner, demonstrate only that the inmate was non-compliant with verbal instructions and was "combative" by attempting to break loose from petitioner's grasp. Petitioner had to use force to bring the inmate down to the ground. However, the petitioner indicated that he felt pain while they were standing and the inmate was attempting to "get loose." The inmate's movement caused petitioner's knee to "move awkwardly.["] Unlike the cases cited[], [petitioner] did not break up a fight, was not kicked or punched, was not dragged down a set of stairs, did not require the assistance of multiple other officers to subdue the inmate, or was not otherwise involved in a violent assault by an inmate.

The ALJ then addressed whether the petitioner's disability was a direct result of the October 2017 incident. Because she gave Dr. Lakin's testimony greater weight, the ALJ found the "major, overwhelming cause of petitioner's total and permanent disability was arthritis to his knee from the 1990 injury and history of ACL reconstruction." Thus, she determined petitioner's disability was "the result of his pre-existing degenerative disease in his left knee that was aggravated or accelerated by the October 2017 incident." Because petitioner

7

failed to meet either prong by a preponderance of credible evidence, the ALJ concluded he was not eligible for accidental disability retirement benefits.

On August 10, 2022, after reviewing the record and petitioner's exceptions, the Board issued a final administrative determination in which it adopted the ALJ's initial decision in its entirety.

This appeal follows, wherein petitioner raises the following points for our consideration:

> POINT I
>
> THE ACT OF GOING "HANDS ON" WITH AN INMATE BY ARZOLA ON OCTOBER 11, 2017 WAS "UNDESIGNED AND UNEXPECTED."
>
> POINT II
>
> THE APPELLATE DIVISION HAS PREVIOUSLY CAUTIONED THE BOARD FOR MISAPPLYING RICHARDSON IN THE CONTEXT OF "UNDESIGNED AND UNEXPECTED."
>
> POINT III
>
> THE MERE FACT ARZOLA DEALT WITH VIOLENT INMATES IN THE PAST WHILE RESPONDING TO CODES AND WAS TRAINED TO DEAL WITH VIOLENT INMATES DOES NOT UNDERMINE THE EVENTS OF OCTOBER 11, 2017 AS BEING "UNDESIGNED AND UNEXPECTED."
>
> POINT IV

8

PRE-EXISTING PATHOLOGY IS NOT A PER SE BAR TO BEING AWARDED AN ACCIDENTAL DISABILITY RETIREMENT.

Our review of an administrative agency's determination is limited.  Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011).  We will sustain an agency's final decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Mount v. Bd. of Trs., PFRS, 233 N.J. 402, 418 (2018) (quoting ibid.).  In determining whether an agency's decision is arbitrary, capricious, or unreasonable, we examine: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, "the agency clearly erred in reaching [its] conclusion."  In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).

We are not bound by an agency's statutory interpretation or other legal determinations and review these issues de novo.  Mount, 233 N.J. at 418-19.  However, we generally accord "substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing."  Richardson v. Bd. of Trs., PFRS, 192 N.J. 189, 196 (2007).  "Such deference has been specifically extended to state agencies that administer pension

statutes," because "a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Piatt v. PFRS, 443 N.J. Super. 80, 99 (App. Div. 2015) (first citing ibid.; and then quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).

The PFRS pension plan grants accidental disability retirement benefits if "the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." N.J.S.A. 43:16A-7(a)(1). A claimant seeking accidental disability retirement benefits must prove five elements:

1) that he is permanently and totally disabled;

2) as a direct result of a traumatic event that is

a) identifiable as to time and place,

b) undesigned and unexpected, and

c) caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4) that the disability was not the result of the member's willful negligence; and

5) that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson, 192 N.J. at 212-13; N.J.S.A. 43:16A-7(a)(1).]

Here, it is undisputed petitioner is permanently and totally disabled and he is physically incapacitated from performing his usual or any other duty. The issue is whether the disability was the result of a traumatic event.

A disability must be the "direct result" of a traumatic event, so that the event "constitutes the essential significant or the substantial contributing cause of the [applicant's] disability." Gerba v. Bd. of Trs. of the Pub. Emps.' Ret. Sys., 83 N.J. 174, 185-86 (1980). To be a traumatic event, it must be "undesigned and unexpected." Richardson, 192 N.J. at 212. "The polestar of the inquiry is whether, during the regular performance of his job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214.

The ALJ found there was no evidence of anything "unusual or unexpected" about petitioner's responding to a code for assistance, and he was injured doing exactly what he intended to do. A senior correctional police officer's job duties included, but were not limited to, "controlling the general

11

conduct and behavior of inmates, preventing disturbances and escape attempts, and maintaining discipline and order." Petitioner credibly testified he was performing his ordinary job duties when he acted to restrain the non-compliant inmate. He argues now, as he did before the ALJ, that his injury was undesigned and unexpected; however, he offers no published authority in support of his claim that the "act of going 'hands on' with an inmate" was undesigned and unexpected. To the contrary, the record supports the ALJ's conclusion that petitioner was doing what he was expected to do in responding to the code.

Petitioner further argues the Board adopted an unduly narrow view of what constitutes an undesigned and unexpected traumatic event, citing Richardson and Gable v. Bd. of Trs., 115 N.J. 212 (1989). We disagree because both these cases involve an officer who suffered an unexpected attack on his person by an inmate. The Court instructed that an "unanticipated consequence" only qualifies as a traumatic event "if that consequence is extraordinary or unusual in common experience." Richardson, 192 N.J. at 201 (quoting Russo, 62 N.J. at 154). We cannot find error in the Board's determination that the injuries petitioner suffered were not "extraordinary or unusual in common experience" but simply the consequence of his ordinary work effort.

A-0275-22

Petitioner also argues his pre-existing injury is not a bar to accidental disability benefits, citing Cattani v. Bd. of Trs., PFRS, 69 N.J. 578 (1976). Cattani holds that a petitioner is not entitled to accidental disability retirement when the disability resulted from a pre-existing condition that was aggravated or accelerated by work effort alone, even when the work effort is unusual or excessive. Id. at 585. The Court noted there may be "a basis for an accidental disability pension . . . if it were shown that the disability directly resulted from the combined effect of a traumatic event and a pre[-]existing disease." Id. at 586. That is not the case here because the Board determined there had been no traumatic event.

Having reviewed the record, we find no basis to find the Board's adoption of the ALJ's findings was arbitrary or capricious. The ALJ's findings were fully supported by substantial credible evidence in the record and in accord with the controlling statutes.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-0275-22