**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0292-24

DAVID DOMBROWSKI,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued January 15, 2026 – Decided April 2, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx2442.

Zinovia H. Stone argued the cause for appellant (Caruso Smith Picini, PC, attorneys; Timothy R. Smith, of counsel; Zinovia H. Stone, on the briefs).

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Gregory Petzold, Executive Director of Legal Affairs, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Petitioner David Dombrowski appeals from a September 9, 2024 final administrative decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), denying his application for accidental disability retirement benefits (ADRB).  We affirm.

I.

Petitioner was a patrol officer for the North Arlington Police Department (NAPD).  He began working for the NAPD in 2014 and enrolled in the PFRS effective January 1, 2015.  In addition to his duties as a patrol officer, petitioner also served as a Law Enforcement Support Office (LESO)[1] officer for government procurement.  As an LESO officer, petitioner routinely transported government surplus supplies to local law enforcement agencies for their use.

On November 17, 2020, petitioner, accompanied by two other officers, was unloading government surplus supplies for the NAPD's use.  While removing the boxes from the back of a pickup truck, one of them became stuck.  Petitioner attempted to pull the box loose to lift it out of the truck and, while doing so, felt a pop in his left shoulder but did not initially feel pain.  He

---

[1] LESO is a federal government program used to transfer excess Department of Defense property to local law enforcement agencies.

A-0292-24

completed his work for the day, went home, and when he woke up the next day, felt pain in his left shoulder. Petitioner advised his supervisors of what occurred but declined to have them fill out a report, anticipating he "could tough through" the pain.

On January 17, 2021, petitioner notified NAPD Lieutenant Gary Edwards of his injury and lingering pain. Lieutenant Edwards completed a First Report of Injury (FROI) form on petitioner's behalf. In the FROI, Lieutenant Edwards stated petitioner's injury occurred from "off[-]loading equipment out of a pick-up [truck] when an item became stuck requiring extra effort [and] pulling [his] muscle in the process."

Petitioner filed applications for ADRB on June 9 and September 17, 2021, indicating he was disabled due to the November 17, 2020 incident and requesting an effective retirement date of December 1, 2021. His second ADRB application alleged: "As a result of this injury[,] I have limited range of motion and cannot lift more than seven pounds in that arm. I cannot perform my duties as a result of this injury."

The Board considered petitioner's application and denied his claim for ADRB in an April 12, 2022 written decision. Because the Board found petitioner was totally and permanently physically disabled, and his injury

3

occurred during and as a direct result of his regular or assigned duties, it awarded him ordinary disability retirement benefits (ODRB). However, it denied petitioner's claim for ADRB, finding the incident was not undesigned and unexpected.

Petitioner appealed from the denial of ADRB, and the Board transmitted his case to the Office of Administrative Law for a hearing before an administrative law judge (ALJ). In addition to recounting the incident, petitioner testified he did not have any involvement in completing the FROI form, was not present when Lieutenant Edwards completed it, and was not shown the report prior to its submission. Petitioner did not instruct Lieutenant Edwards to indicate he used "extra effort" to remove the box from being stuck, and he did not recall ever saying that to anyone.

The ALJ's initial decision focused on whether the mechanism that caused petitioner's injury was the result of an undesigned and unexpected event as defined in Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 212 (2007). He concluded appellant's application for ADRB should be granted because "[t]here [wa]s no evidence in the record to support any notion that [petitioner] expected or should have expected the box he

4

was unloading to become stuck. . . . [I]t was the advent of an unexpected outside force[] . . . that caused the accident."

The Board rejected the ALJ's conclusion petitioner was entitled to ADRB. It disagreed with his finding the stuck box qualified as an "unexpected outside force" under Richardson. The Board reasoned:

> [Petitioner], alone, was attempting to lift the box; no one performed an unusual act forcing the box to become stuck simultaneous to [petitioner] attempting to lift it. The action of attempting to loosen the box was not a traumatic event outside of his control; it was his decision to continue to attempt to move the box, despite the fact that he found it was stuck. Although he did not intend to injure himself, he had the option to discontinue the attempt to move a box that was initially immovable. For the foregoing reasons, the Board rejects the determination that [petitioner] has met his burden of proof that the incident was undesigned and unexpected.

Thus, the Board concluded petitioner was not entitled to ADRB. On appeal, petitioner argues the Board's decision was arbitrary, capricious, unreasonable, and not supported by substantial credible evidence in the record.

II.

Our role in reviewing the decision of an administrative agency is limited. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated

5

responsibility, City of Newark v. Nat. Res. Council in Dep't of Env't Prot., 82 N.J. 530, 539 (1980), and "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy," Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995). We will not upset the determination of an administrative agency absent a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

Although we are not bound by an agency's decision on purely legal questions, we ordinarily give "substantial deference" to an agency's interpretation of those statutes the agency is responsible for enforcing. Richardson, 192 N.J. at 196. "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010). Rather, the judicial role in reviewing administrative action is generally limited to the following inquiries:

A-0292-24

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

To determine whether an agency's decision is supported by substantial evidence, we may not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). We must consider only "'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 92-93 (1973) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a

A-0292-24

conclusion." In re Application of Hackensack Water Co., 41 N.J. Super. 408, 418 (App. Div. 1956).

The PFRS pension plan grants ADRB if the member is

> permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [the member's] regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of [their] usual duty and of any other available duty in the department which [their] employer is willing to assign to [them].
>
> [N.J.S.A. 43:16A-7(a)(1).]

Under Richardson, an individual seeking ADRB under N.J.S.A. 43:16A-7(a)(1) must prove the following elements:

> 1) that [the member] is permanently and totally disabled;
>
> 2) as a direct result of a traumatic event that is
>
> a) identifiable as to time and place,
>
> b) undesigned and unexpected, and
>
> c) caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;

8

4)     that the disability was not the result of the member's willful negligence; and

5)     that the member is mentally or physically incapacitated from performing [their] usual or any other duty.

[192 N.J. at 212-13.]

"The polestar of the inquiry is whether, during the regular performance of [the] job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214. "[A]n accident may be found either in an unintended external event or in an unanticipated consequence of an intended external event if that consequence is extraordinary or unusual in common experience." Russo, 62 N.J. at 154. Injuries resulting from an unusual situation or combination of circumstances are "undesigned and unexpected." See Moran v. Bd. of Trs., Police & Firemen's Ret. Sys., 438 N.J. Super. 346, 354 (App. Div. 2014); Brooks v. Bd. of Trs., Pub. Emps.' Ret. Sys., 425 N.J. Super 277, 283-84 (App. Div. 2012).

Here, it is undisputed petitioner is permanently and totally disabled as a result of the November 17, 2020 incident. It is also undisputed petitioner's injury occurred during and as a result of the performance of his regular, assigned duties. The sole issue is whether his disability was the result of a traumatic,

9

unintended and undesigned event. Petitioner argues even though lifting the box of surplus supplies was a part of his regular job tasks, the box getting stuck in the process of moving it qualifies as an unexpected, external event under Richardson.

Although a traumatic event can occur during usual work effort, Richardson makes clear the "work effort itself . . . cannot be the traumatic event." 192 N.J. at 211. Here, petitioner injured his shoulder while attempting to lift a box that became stuck in the process of moving it. Nothing in the record demonstrated the box became stuck from an external, undesigned, and unexpected event that caused petitioner to suffer an injury while performing a usual work duty. Rather, petitioner suffered "an unanticipated consequence of an intended external event." Id. at 201 (quoting Russo, 62 N.J. at 154).

Because the act of moving a box of supplies from a truck was not undesigned and unexpected, petitioner had to show the unanticipated consequence of that normal intended work activity was "extraordinary or unusual in common experience." Ibid. (quoting Russo, 62 N.J. at 154). Because a shoulder injury from attempting to move a stuck box can hardly be classified as extraordinary or unusual in our common experience, the Board correctly found petitioner did not carry his burden.

A-0292-24

Lastly, we note the Board's final administrative determination referenced Lieutenant Edwards's written statement petitioner used "extra effort" to attempt to lift the stuck box, which was disputed by petitioner and unsupported by the record. Nevertheless, excising this erroneous detail from the Board's decision does not alter the analysis of whether an undesigned, unexpected traumatic event occurred.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-0292-24